STATE v. GREAT NORTHERN RAILWAY COMPANY.[1]

March 28, 1907.

Nos. 15,113—(207).

**Railway—Increase of Capital Stock.**

This is an appeal from an order granting a temporary injunction restraining the defendant from making any increase in its capital stock without the consent of the railroad and warehouse commission. *Held*, that the terms and conditions upon which corporations may be created, the powers and capital stock they may have, the purposes for which they may increase their capital stock, and the conditions and limitations thereof are exclusively matters for legislative action, which cannot be delegated.

**Regulation by Legislature.**

The state having created railway corporations for public purposes, the legislature has the right to enact statutes regulating the increase of their capital stock. Such regulations tend to prevent secrecy of operation and accounts by such public agencies, and the issue and sale of fictitious or watered stock, which is a felony in this state.

**Same—Increase of Capital Stock.**

In the exercise of this right the legislature may enact a statute providing generally for what purposes and upon what terms, conditions, and limitations an increase of capital stock may be made, and confer upon a commission the duty of supervising any proposed increase.

**Same—Powers of Railroad Commission.**

It may also delegate to the commission the duty of finding the facts in each particular case, and authorize and require it, if it finds the existence of facts that bring the case within the statute, to allow the proposed increase; otherwise, to refuse it.

**Unconstitutional Delegation of Power.**

Any statute, however, which attempts to authorize the commission in its judgment to allow an increase of capital stock for such purposes and on such terms as it may deem advisable, or in its discretion to refuse it, would be unconstitutional, as an attempt to delegate legislative power.

**Same.**

Section 2872, R. L. 1905, relating to the increase of capital stock of railway corporations, does not violate either article 1, § 11, of the state

[1] Reported in 111 N. W. 289.

constitution, or article 1, § 10, of the constitution of the United States. which forbid the enactment of any law impairing the obligation of contracts. It does, however, violate section 1, art. 3, of the state constitution, in that it delegates to the commission legislative power.

Action in the district court for Ramsey county for a permanent injunction restraining defendant from taking any action in connection with the plans relating to its proposed issue of capital stock, until defendant shall have made due application to the railroad and warehouse commission of the state of Minnesota and procured its consent to such stock issue after a public hearing as by law provided, and for a temporary injunction pendente lite. An order to show cause having been granted, the defendant filed its answer and the matter was argued before Hallam, J., who directed an injunction pendente lite to issue. From his order defendant appealed. Reversed.

Inter alia the answer admitted that on December 11, 1906, by a resolution duly adopted by its board of directors defendant increased its capital stock by an issue of six hundred thousand shares of the par value of $100 each; that said resolution, duly authenticated, was on December 31, 1906, filed and recorded in the office of the secretary of state of Minnesota; and that the resolution was substantially as follows:

"Resolved, That the capital stock of this company be and is hereby increased by an issue of six hundred thousand shares, of the par value of one hundred dollars each, in addition to the present amount thereof, to-wit: One million five hundred thousand shares, of the par value of one hundred dollars each, so that hereafter the capital stock of this company shall be two hundred and ten million dollars, consisting of two million one hundred thousand shares, of the par value of one hundred dollars each.

"Resolved, That this company create and issue said six hundred thousand shares of said stock, in addition to the one million five hundred thousand shares thereof, heretofore provided to be created and issued, for the following general purposes:

"1. To provide funds to pay for such further and additional equipment as the board of directors may from time to time determine to be necessary.

"2. To provide funds for additional terminals and facilities on existing lines, including second main track, and for reductions of grades and improvements of lines as may be authorized from time to time by the directors.

"3. To acquire the bonds or stocks, or both, of the following named companies: * * * * *.

"4. To acquire such other securities as the board of directors may from time to time authorize to be acquired.

"The company shall not have power to increase the amount of said stock without the assent of the holders of three-fourths of all such stock outstanding at the time of such increase; but nothing in this resolution contained shall be construed as limiting the power of this company to issue bonds, secured by mortgage or otherwise, including bonds of the nature and form of debenture stock, in case such issue shall be deemed expedient by this company's board of directors.

"The additional stock herein provided for shall not be issued until the creation and issuance of the same shall have been assented to and ratified by the holders of at least three-fourths of all the shares of the company now outstanding, such assent and ratification to be evidenced by subscription, or assignment of right to subscribe for shares of such additional stock."

The answer further admitted that said defendant did duly offer said additional stock for subscription for cash at par to stockholders of record January 4, 1907, and more than seventy five per cent. of said stock had been duly subscribed pursuant to said offer, and the first instalment thereof paid; that it was the intention of said defendant not to issue said stock until the full par value thereof had been paid to it in cash at the times and manner stated in the offer, and that by the terms of the offer defendant could not issue any of said stock before May 1, 1908.

The answer alleged that the several corporations whose bonds and stocks defendant proposed to acquire were incorporated under the laws of the states of North Dakota, Montana, and Washington, the Province of Manitoba and the Dominion of Canada, and that each company had constructed and owned lines of railway located in the state where it was incorporated, which railways connected with the lines of the de-

fendant at various points; that none of the roads was parallel or competing with the lines of defendant but constitute branches and feeders of said line; that the purchase of the bonds and stocks of these companies was for the purpose of acquiring said companies and consolidating with them.

The answer alleged that all its outstanding stock is preferred stock and that no common stock has ever been issued.

The answer further alleged that in the year 1898 the railroad and warehouse commission submitted to the attorney general of the state the question whether this defendant could lawfully increase its capital stock without the consent of said commission, and that said attorney general advised said commission that the defendant had the lawful right to increase its stock without their consent; that thereafter on July 22, 1898, the defendant increased its stock in the amount of twenty five million dollars; on October 19, 1898, in the amount of twenty five million dollars; on April 15, 1899, in the amount of twenty four million dollars; on April 20, 1900, in the amount of one million dollars; on February 22, 1901, in the amount of twenty five million dollars; on October 12, 1905, in the amount of twenty five million dollars. That each of these increases was made pursuant to section 10 of the act of February 28, 1865 (Sp. Laws 1865, p. 35, c. 4) and in the manner provided in Laws 1889, c. 228, by resolution of its board of directors setting forth the purpose of such increase and filing a copy of the resolution in the office of the secretary of state and paying the proper fees therefor, aggregating $60,000. That each of these increases was made with full knowledge of the railroad and warehouse commission and the attorney general in office at the time thereof, and without the consent of the commission, and that no protest against any of such increases was made by the commission or the attorney general until this increase of December 11, 1906. That all said increases have been sold and paid in cash at par and are outstanding. That the construction placed upon the laws by the railroad and warehouse commission and the attorney general is a practical construction given to the laws by the authorities charged with enforcing them to the effect that defendant need not apply to said commission for leave to increase its capital stock.

*William R. Begg* and *Davis, Kellogg & Severance,* for appellant.

A. The increase of its authorized capital stock made by this defendant is valid, and the additional stock may lawfully be issued, unless the consent of the railroad and warehouse commission of the state of Minnesota is necessary. Act of Feb. 28, 1865, (Sp. Laws 1865, p. 35, c. 4,) § 10; R. L. 1905, §§ 2907, 2899. Defendant has no common stock outstanding. The resolution creating the additional stock provides that the increase shall be assented to by the holders of three-fourths in amount of the outstanding preferred stock, such assent to be evidenced by subscription or assignment of right to subscribe to the additional stock. The holders of more than three-fourths in amount of the outstanding stock have subscribed for the stock covered by the increase.

To create stock is to authorize its issue. The stock must be created before it can be issued or disposed of. It may be created either by the authorization thereof in the original charter or articles of incorporation, or by an amendment to the charter or articles of incorporation increasing the capital stock beyond the amount authorized in the original charter or articles. The statutes cited above authorize the increase made by defendant by resolution of December 11, 1906.

In view of the fact that defendant's charter does not specify the manner in which stock shall be created as authorized in section 10 of the act of February 28, 1865, it has always been by defendant thought proper and advisable to effect increases in the manner prescribed in section 2899. The preferred stock which the defendant is by that section authorized to create is not limited in amount by section 3 of the act of March 1, 1856. (Laws 1856, p. 295, c. 160.) When the act of February 28, 1865, was enacted, the defendant was already authorized to issue not exceeding thirty millions of stock. Thirty millions of capital stock was already created and authorized to be issued before section 10 of the act of February 28, 1865, which authorized the defendant to create preferred stock, was enacted; that is, defendant needed no authority to create capital stock which was already created and which existed, and which might be issued any time. In all of its increases the defendant has proceeded under section 10 of

100 M.—29

the act of February 28, 1865, and in that section it has found its authority for the creation of preferred stock.

It has in each instance effected the increase or the creation of the additional preferred stock in the manner prescribed by R. L. 1905, § 2899, Laws 1889, c. 228. In fact, until that chapter 228, (R. L. 1905, § 2899,) was enacted, there was no general law under which a corporation organized under a special charter or special law could increase its capital stock. The only provision for the increase of capital stock was the provision now found in R. L. 1905, § 2871, and which contemplates that the increase will be effected by amendment of the articles of incorporation under the general law.

The defendant has complied with every requirement imposed by the legislature as a condition to the increase of capital stock other than the requirement found in R. L. 1905, § 2872. There is no statement in section 2872 that increases made without the consent of the commission shall be void, particularly where the stock has been subscribed for by innocent persons. If the increase made is void, it is only because the sanction of the railroad and warehouse commission is essential to give validity to the enactments of the legislature. There is no allegation that defendant threatens to use the money to be secured by the sale of this stock for ultra vires transactions. The increase of the capital stock in itself cannot be ultra vires when it is authorized by the laws.

B. Laws 1887, c. 265 (R. L. 1905, § 2872) is unconstitutional and void; (1) because it is an unwarranted attempt by the legislature to delegate to an administrative body functions of the highest order; (2) because, as applied to section 10 of the act of Feb. 28, 1865, it violates the obligations of the contract between this defendant and the state of Minnesota, and is, therefore, in violation of article 1, § 10, of the federal constitution, and article 1, § 11, of the state constitution.

1. The law above quoted is unconstitutional and void, as an unwarranted attempt to delegate to a ministerial body legislative functions of the highest order.

(a) Section 2872, R. L. 1905, leaves it to the absolute discretion of the railroad and warehouse commission of the state to determine, in each instance, and for each company applying, whether or not it

will permit an increase of capital stock.   No facts are stated the existence of which is made a condition to the allowance of an increase of capital stock.   It is not enacted that upon the existence of any particular facts, or any particular set of circumstances, the commission must allow the increase.   No rule is laid down in the statute to guide the commission in reaching a conclusion.   It cannot be that the commission is required to determine whether or not the applicant has taken the steps prescribed by section 2871, or by section 2899, of the revised laws, as being necessary to effect an increase, because the instrument effecting the increase cannot be filed with the secretary of state, or the fee paid to the state treasurer, until the commission has given its consent.   When its consent has been given the acts which the legislature has said shall effect an increase may be done.   The commission, however, is not charged with the duty of seeing that they are done.   Even after the commission has consented to an increase it would not of course compel the railway company to make an increase.   The terms of the act leave to the commission the absolute and untrammeled right to decide whether or not railway companies may increase their capital stock.

The mental attitude which leads one to allow or disapprove a thing may be the result of one's sentiments; one's political beliefs; one's economic theories; one's religious and social relations, and the like; one's judgment as to expediency and policy.   All these are matters to appeal to legislative judgment.   No one would contend that these matters should appeal to a body of men exercising judicial functions. The judiciary apply the law to a fixed state of facts.   They declare what the law is.   The legislature declares what is expedient from the standpoint of policy, economics and the like.   Apprehension of danger from the accumulation of large capital in the hands of one corporation, the sufficiency of service in the territory in question, disapproval of the present management and a thousand and one sentimental, economic and policy reasons, in respect to which the legislature has nowhere declared what the policy of this state shall be, may appeal to the commission and control its action.   In re Incorporation of Village, 93 Wis. 616, 67 N. W. 1033; Forsyth v. City of Hammond, 71 Fed. 443, 18 C. C. A. 175; City v. Hawkinson, 75 Ill. 152; King v. State, 87 Tenn. 304.   The commission's rulings upon the subject of

increases need not be uniform. It may treat one company in one way and another company in an entirely different way. It may enact a special law applicable to each separate corporation and to each separate application. King v. State, supra; State v. Rogers, 71 Oh. St. 203, 73 N. E. 463. The authority is not one which is automatic, and which follows necessarily by force of the law itself upon the establishment of certain facts. The law does not enact that any facts shall be sufficient to compel this authority.

The effect of section 2872 is to elevate the railroad and warehouse commission to the position of a third legislative body, with veto power. It substantially and practically provides that the laws already enacted by the legislature, authorizing increases of the capital stock of corporations in the manner and upon the terms stated in those laws, shall be effective as laws, or shall be ineffective and amount to nothing, as the will of the railroad and warehouse commission shall decide. The commission is given absolute veto power.

(b) If the commission shall allow the increase it shall determine the manner in which, and the terms upon which, the increase shall be made. The legislature of the state has already, in R. L. 1905, §§ 2871 and 2899, stated the manner in which, and the terms upon which capital stock of railroad corporations may be increased. Certain formalities must be observed; certain fees paid to the state treasurer; certain documents adopted, in a certain manner, and filed in a certain office. Shall the railroad and warehouse commission repeal these laws or modify them in the case of each particular application? Instead of a resolution of the board of directors or stockholders, may they substitute the affidavit of the president? Shall the increase be effected by the issue of common stock when all the other outstanding stock is preferred, or shall the commission require a different class of preferred stock? May the commission in their wisdom require that the company, instead of offering the stock to its own shareholders for cash at par, offer it to the public at par, or that it offer the stock to the public at its market value? Or, may it require that the stock be disposed of to some other class of persons; or offered to some part of the public or some particular interest at a certain price higher than its par value and less than its market value? To what limit may not the commission go under the absolute power conferred

upon them by this law? They are given the widest possible latitude in the exercise of legislative judgment as to the expediency of increases of stock, and as to the manner in which, and the terms upon which, the increases may be made. It is for the legislature to determine and settle these matters.

(c) The right to increase the capital stock has been recognized and conferred by the legislature upon corporations. It is an important right. It is essential to the performance by public-service corporations of their duties to the public. The welfare and prosperity of the country depend to a great extent upon the promptness and efficiency of railway service. This service depends for its promptness and efficiency upon the equipment and facilities at the hands of the carrier. The demand for facilities and equipment increases with the growing volume of business. The country is face to face with the question of the inadequacy of the transportation facilities at its command. The railways are overtaxed. Traffic is delayed. Injuries result. There is a crying need for additional equipment, and additional trackage. New territory is to be opened and developed. This demands large expenditures of money. It requires additional capital. The whole question is one of vast importance to the people. It is a matter of the greatest legislative importance.

(d) It is evident from the mere reading of the statute that the power conferred upon the commission is not ministerial. The law requires the exercise of discretion and judgment. That the discretion and judgment to be exercised are legislative, and not judicial, is evident from the following considerations: Suppose a railway company should make application to the commission for leave to increase its capital stock, stating any state of facts which the mind can imagine would appeal to the commission: If the commission denies the application, could this court, or any court, review the action of the commission in declining to permit the increase, either in a mandamus proceeding, by certiorari, or injunction, or in any form of judicial proceeding? A court can inquire only into the constitutional power of the legislature to enact. It cannot inquire into the policy or expediency of the enactment. State v. Merchants, 114 La. 529, 38 South. 443; Dobbins v. City, 139 Cal. 179, 72 Pac. 970; Ex parte Boyce, 27 Nev. 299, 75 Pac. 1.

Suppose the commission should grant to a railroad company permission to increase its capital stock, and should fix and prescribe the manner in which, and the terms upon which, the increase should be made. Can the courts review the decision of the commission, reverse or repeal it, and hold the increase void? The decisions of this court have abundantly settled this question in the negative. State v. Iverson, 92 Minn. 355; Moede v. Stearns County, 43 Minn. 312; Christlieb v. Hennepin County, 41 Minn. 142; Lemont v. Dodge County, 39 Minn. 385; In re Wilson, 32 Minn. 145, 150; Secombe v. Kittelson, 29 Minn. 555; State v. Dike, 20 Minn. 314, (363); Western R. Co. of Minnesota v. DeGraff, 27 Minn. 1; State v. Whitcomb, 28 Minn. 50; State v. Braden, 40 Minn. 174.

(e) The provisions of the law that no capital stock shall be issued by any railroad corporation until the full amount thereof has been paid to the corporation in money, labor or materials actually used in the construction of the road can have no influence upon the question of the allowance by the commission of the increase. Capital stock which has already been authorized by the articles of incorporation or the charter does not require the consent of the commission to its continued existence. The consent of the commission is not a prerequisite to the issue and sale of the stock. Additional stock authorized by an increase made with the consent of the commission may be issued and sold free from any control by the commission. The limitation upon the right to issue stock is not a limitation upon the allowance of the increase and has no bearing upon it.

(f) R. L. 1905, § 2872, is vastly different from section 3003 relating to banks. The latter section relates to increase of stock by banks and financial institutions. The sole commodity in which banks deal is money. When they have secured the money for which they intend to issue their stock, they have their stock-in-trade. It is easy enough in such cases to say that the increase shall not be valid until they have in their vaults the money for the stock, and until the public examiner shall find that to be a fact. Money is not the stock-in-trade of a railroad company. It is but a means to an end; but a means to securing the plant and facilities required by it. Section 2872 has no such absurd object as to require the railroad and warehouse commission to go out and see the railroad already constructed and determine

for itself that the money, property and materials for which the stock is proposed to be issued have already entered into that railroad.

· (g) The claim of the attorney general that the powers conferred upon the commission by section 2872 are simply powers to prevent the imposition upon the people of Minnesota of exorbitant fixed charges is untenable. Capital stock, as the court well knows, is not a fixed charge; nor are the dividends thereon a fixed charge. If the company's business prospers, dividends may be earned and paid. The shareholders take the chances as to this. The rule applicable to railway companies and other common carriers is that they may earn only a sufficient amount to pay the cost of performing the service and a fair return upon the value or present cost of reproducing the property devoted to public use. Steenerson v. Great Northern Ry. Co., 69 Minn. 353; Smyth v. Ames, 169 U. S. 466, 544, 546, 547.

The power to create corporations; to amend, modify, extend and renew their charters is legislative. It is made so by the constitution of the state. Const. art. 4, §§ 33, 34; art. 10, § 2. That duties such as those attempted to be delegated to the railroad and warehouse commission by section 2872 are legislative and therefore not to be delegated under the constitution is abundantly established by the decisions. State v. Young, 29 Minn. 474, 551; State v. Simons, 32 Minn. 540, 543; Anderson v. Manchester Fire Assur. Co., 59 Minn. 182, 193, 194; Dowling v. Lancashire, 92 Wis. 63, 65 N. W. 738, 793; O'Neil v. American, 166 Pa. St. 72, 30 Atl. 943; King v. Concordia Co., 140 Mich. 258, 103 N. W. 616, 619; State v. Budge, 105 N. W. 724, 727; State v. Burdge, 95 Wis. 390, 70 N. W. 347; Owensboro v. Todd, 91 Ky. 175, 15 S. W. 56; U. S. v. Keokuk & H. Bridge Co. (D. C.) 45 Fed. 178, 180; State v. Rogers, 71 Oh. St. 203, 73 N. E. 461; In re Incorporation of Village, 93 Wis. 616, 67 N. W. 1033, 1035; State v. Field, 17 Mo. 529; Shephard v. Wheeling, 30 W. Va. 479; King v. State, 87 Tenn. 304; Forsyth v. City of Hammond, 71 Fed. 443, 18 C. C. A. 175; City v. Hawkinson, 75 Ill. 152, 155–157; Territory v. Stewart, 1 Wash. St. 98, 23 Pac. 405, 406, 407; Commonwealth v. Addams, 95 Ky. 588, 26 S. W. 581, 582. State v. Chicago, M. & St. P. Ry. Co., 38 Minn. 281, is not opposed to the defendant's contention in this case. Neither is Field v. Clark, 143 U. S. 649.

It is, of course, well settled that the legislature may enact that upon the existence of certain facts the law shall be thus and so. It may then lawfully delegate to some body or person the duty of ascertaining whether or not the required facts exist. Such is R. L. 1905, § 3003, relating to the increase of capital by a bank. When the entire new capital has been paid in, the examiner shall thereupon issue his certificate of that fact and of his approval thereof. The finding by the public examiner is one of fact. Such also is R. L. 1905, § 3009. The public examiner is there required to ascertain the existence of certain facts, and upon the ascertaining of the facts, he shall issue or refuse to issue his certificate authorizing the bank.

. Section 5142, R. S. (U. S.) is the only federal law authorizing banks to increase their capital. That section confers upon the comptroller of the currency merely the administrative duty of ascertaining first, whether or not the amount of the increase has been paid in in cash; second, whether or not the business of the bank requires additional capital. The statutes above referred to relate only to financial institutions whose stock in trade is money—cash. They are not engaged in any enterprise other than the furnishing of money to people who need it. The plant they secure to enable them to transact business is only money. The fact whether or not this money has been paid in can be easily determined. Again the public officials may determine whether or not the business of the bank requires additional capital. These are questions of fact depending upon what is disclosed by the books of the bank, its loans and discounts, deposits, and other matters of that nature as well as in some degree upon the needs of the community.

If it be assumed that the power conferred upon the railroad and warehouse commission by section 2872 is purely judicial, then the statute is unconstitutional as delegating a judicial power to an administrative body. Const. art. 3, § 1. The duties of the commission are of a legislative nature. State v. Chicago, M. & St. P. Ry. Co., 38 Minn. 281; Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362–393. The power of the court to review the orders of the commission exists only to the same extent as does the power of the court to review enactments of the legislature. Steenerson v. Great Northern Ry. Co., 69 Minn. 353; Interstate Commerce Commission v. Cincinnati, N. O. & T. P. Ry. Co., 167 U. S. 479–499; Interstate Commerce Com-

mission v. Alabama Midland Ry. Co., 168 U. S. 144–162; Nebraska v. State, 55 Neb. 627; Cotting v. Kansas City Stockyards Co. (C. C.) 82 Fed. 845; Express Cases, 117 U. S. 1–29; Chicago & G. T. Ry. Co. v. Wellman, 143 U. S. 339. The commission then, being an administrative body with quasi-legislative powers, judicial powers cannot be constitutionally conferred upon it.

2. Section 2872, is unconstitutional because it impairs the obligation of the contract contained in defendant's charter, and particularly section 10 of the act of February 28, 1865.

The power granted by section 10 has been frequently exercised. It is one of the valuable inducements to the acceptance of a charter. It cannot be taken away. To deprive defendant of the right granted is to impair the obligation of the contract, in violation of article 1, § 10, of the federal constitution. This, of course, does not mean that an increase of capital stock under section 10 may not be regulated in any proper manner in which an increase may be made and prevent the watering of stock; but, if the construction of section 2872 be such as we have contended for, then that section practically destroys the right conferred by section 10, because the railroad and warehouse commission may arbitrarily, without any reason whatsoever, refuse to permit defendant to exercise the right granted. Piqua Branch of State Bank of Ohio v. Knoop, 16 How. 369, 380; Davis v. Gray, 16 Wall. 203; Pearsall v. Great Northern Ry. Co., 161 U. S. 646, 673; Dartmouth College Case, 4 Wheat. 518; Fletcher v. Peck, 6 Cranch, 87, 137; State of New Jersey v. Wilson, 7 Cranch, 164; Dodge v. Woolsey, 18 How. 331; Jefferson Branch Bank v. Skelly, 1 Black, 436; Home of the Friendless v. Rouse, 8 Wall. 430; Wilmington R. R. v. Reid, 13 Wall. 264; Humphrey v. Pegues, 16 Wall. 244; Farrington v. Tennessee, 95 U. S. 679; New Jersey v. Yard, 95 U. S. 104; Asylum v. New Orleans, 105 U. S. 362; New Orleans Gas Co. v. Louisiana Light Co., 115 U. S. 650; New Orleans Water Works Co. v. Rivers, 115 U. S. 674; Louisville Gas Co. v. Citizens Gas Co., 115 U. S. 683; St. Tammany Water Works v. New Orleans Water Works, 120 U. S. 64; St. Clair v. Illinois, 96 U. S. 63; Monongahela Navigation Co. v. United States, 148 U. S. 312; Woodruff v. Trapnall, 10 How. 218; Furman v. Nichol, 8 Wall. 44; Keith v. Clark, 97 U. S. 454; Antoni v. Greenhow, 107 U. S. 769; Poindexter v. Greenhow,

114 U. S. 270; Planters' Bank of Mississippi v. Sharp, 6 How. 301.

Section 17 of the act of March 1, 1856 (Laws 1856, p. 301, c. 160) provides that the act shall be a public act and may be amended in any manner not destroying or impairing vested rights in said corporation.

From the foregoing authorities it is evident that the right to issue special and preferred stock, having been exercised and enjoyed, has become a vested right.

C. Section 2872 has no application to increases of capital stock proposed to be made by defendant. This section does not control increases of capital stock made under section 10 of the act of Feb. 28, 1865, or increases made in the manner and for the purposes set forth in section 2899, R. L. 1905.

(a) By section 5508, R. L. 1905, it is provided: "The provisions of the revised laws so far as they are the same as those of existing statutes shall be construed as continuations thereof and not as new enactments." Sections 2872 and 2899, as contained in the report of the revisers and as adopted into the revised laws, contain no matter other than such as was attempted to be contained in them at the time they were originally enacted. The report of the commission carefully denotes after each section whether it contains any new matter. The sections referred to do not purport to contain any new matter.

(b) Where a prior law has been repealed, wholly or in part, by a subsequent law, and a later revision of the statutes carries forward and includes both laws, the repealed law is not revived, but is a nullity. Mobile Sav. Bank v. Patty (D. C.) 16 Fed. 751, 752.

(c) Where a law unconstitutional in part because some of the provisions are not within its title is carried forward into a revision adopted by the legislature itself, the law is rendered valid in its entirety from the date of its adoption into the revision because of the removal of the restrictive title. Bowen v. Missouri, 118 Mo. 541, 24 S. W. 436; Hall v. Bunte, 20 Ind. 304. This is on the principle that the legislature might have enacted the entire law under a title sufficiently broad. The revision abolishes all restrictive titles, and, hence, permits the void parts to become operative.

(d) Section 2872 was originally enacted as chapter 265 of the laws of 1887. Its title was "An act regulating proceedings of railroad

companies desiring to increase their capital stock." A portion of the act was as follows: And in no case shall any capital stock be issued by any railroad corporation until the full amount of such stock shall have been paid to the corporation, in money, labor or materials, actually used in the construction of the road of such corporation.

Section 2899, R. L. 1905 was originally enacted as chapter 228 of the general laws of 1899. It was enacted under the following title: An act to amend section (2) chapter (94) of the general laws for the year 1881, relating to corporations. The title of chapter 94, laws of 1881, was as follows: "An act to authorize any railroad company to lease, purchase, or in any way become owner of or to control any other railroad corporation, or to consolidate therewith." Chapter 228 of the laws of 1889 was added to section 2 of chapter 94, laws of 1881, and a portion of it is as follows: Any railroad company of this state may, also, for any other purpose authorized by its acts or articles of incorporation, create, issue and dispose of such amounts of stock as the boards of directors may find necessary for such purpose.

It is claimed by the state that that part of chapter 228 of the laws of 1889 which is above set out is unconstitutional and void because not within the title of the original act. Assuming that the contention of the state is correct, still the remainder of chapter 228, laws of 1889, was valid at the time of the enactment, because it relates to matters germane to those covered by the title of chapter 94, laws of 1881.

If the portion of chapter 228, laws of 1889, quoted above was invalid until the adoption of R. L. 1905, then the portion of chapter 265, laws of 1887, quoted above, if not the entire law, must likewise have been void because not included within the title of that law. If carrying forward into the code, the originally invalid part of chapter 228, laws of 1889, has not given vitality to that part, neither has the carrying forward of chapter 265, laws of 1887, given vitality to the originally invalid parts of that law. The same rule must be applied to both these laws, whatever that rule may be.

(e) Chapter 228, laws 1889, so far as it was valid, repealed chapter 265, laws 1887, so far as it was valid. Carrying forward into the revised laws 1905 the invalid portions of these two enactments is equivalent to an amendment of each, and section 2899 has now a wider

effect as repealing section 2872 than it had prior to its adoption as a part of the revised laws.

(f) Prior to the enactment of chapter 265, laws 1887, there was in force, as far as we have been able to discover, no law prescribing the manner in which railway companies could amend their charters to increase their capital stock other than the law authorizing increases by amendments of the articles of incorporation under the general laws. There were in force statutes permitting all railway companies to create and issue special and preferred stock, such as section 2907, R. L. 1905; section 10 of the act of Feb. 28, 1865. There was in force, prior to 1887, chapter 94, laws 1881, which now appears in sections 2895 to 2898, inclusive, R. L. 1905. In 1889 chapter 228 of the laws of 1889 was enacted as an amendment and addition to section 2, chapter 94, laws of 1881, and permitted the purchase and consolidation referred to in the law of 1881 to be effected by the purchase of stock and bonds of one company by the other. This law provided that, for the special purpose of acquiring such stocks and bonds, the purchasing company might create, issue or dispose of its own stock, bonds or other securities, in addition to the amounts it is otherwise authorized to issue, to an amount not exceeding the actual value of the stock and bonds of the other company acquired by it. It further provided that such a company might also create, issue and dispose of such amount of stock for any other authorized purpose, as the board of directors might find necessary.

Chapter 228, laws of 1889, took out from the operation of chapter 265, laws of 1887, increases of capital stock authorized by the former law. The law of 1887, requiring the consent of the railroad and warehouse commission, can have no application to increases made under the 1889 law, because under the 1887 law, even with the consent of the railroad and warehouse commission, no capital stock can be issued by the railway company until the full amount thereof has been paid to the corporation in money, labor or materials actually used in the construction of the road. Chapter 228, laws 1889, does not contemplate the construction of any road.

Whether the two sections we are discussing be considered as newly enacted upon the adoption of the revised laws of 1905, or as separate enactments, the law of 1889 repealed the law of 1887. It is a familiar

principle that a later law repugnant to a former law repeals the former law to the extent of the repugnancy. It is also familiar law that a later section of the law may limit the effect of an earlier section of the same law. Brightman v. Kirner, 22 Wis. 54, 57; Clark v. Baxter, 98 Minn. 256; State v. Clarke, 54 Mo. 17; Miller v. Grandy, 13 Mich. 540, 545; State v. Studt, 31 Kan. 245, 1 Pac. 635, 636; Nicol v. City of St. Paul, 80 Minn. 415, 417; Mersereau v. Mersereau Co., 51 N. J. Eq. 382, 26 Atl. 682, 683; Connors v. Carp River, 54 Mich. 168, 19 N. W. 938, 939; Rodgers v. United States, 185 U. S. 83, 87, 88; Cook County Nat. Bank v. United States, 107 U. S. 445, 450; Tracy v. Tuffly, 134 U. S. 206, 223; United States v. Fisher, 109 U. S. 143, 145; District of Columbia v. Hutton, 143 U. S. 18, 26; Paquete Habana Case, 175 U. S. 677, 685.

D. The practical construction which has been given to section 2872, as to its application to increase of stock made by the defendant, is entitled to great weight, and should be followed. State v. Northern Pac. Ry. Co., 95 Minn. 43, 46; Commonwealth v. Gregory (Ky.) 89 S. W. 168, 169; State v. Evans, 99 Minn. 220, 108 N. W. 958, 961; State v. Benedict, 15 Minn. 198; City of Faribault v. Misener, 20 Minn. 396; Ames v. Lake Superior & M. R. Co., 21 Minn. 241; State v. Moffett, 64 Minn. 292; Traverse County v. St. Paul, M. & M. Ry. Co., 73 Minn. 426; Green v. Knife Falls Boom Corp., 35 Minn. 161; Willis v. Mabon, 48 Minn. 140; McCulloch v. State of Maryland, 4 Wheat. 316; Knowlton v. Moore, 178 U. S. 41.

*Edward T. Young,* Attorney General, and *R. A. Stone,* Assistant Attorney General, for the State.

A. Section 2872 has not been repealed or modified by implication or otherwise.

An increase of the capital stock of a public-service corporation is a matter of most vital importance to the people, in view of the prima facie right which it carries to earn and pay a dividend on such stock. The only protection which the public has against oppression by public-service corporations lies in the right of regulation, which includes the power to fix reasonable maximum charges. If the capitalization of such a corporation, either real or fictitious, may be increased indefinite-

ly, without the consent of the state, the alleged right of regulation would become a farce. It was to guard against this anomalous condition that the legislature enacted chapter 265 of the laws of 1887, being section 2872 (R. L. 1905), upon which the state's position in this case is based.

Section 2899, which seemingly has a bearing upon the subject, had its origin in 1881 as a part of chapter 94 of the laws of that year; the same being entitled: "An act to authorize any railroad company to lease, purchase or in any way become owner of, or to control, any other railroad corporation, or to consolidate therewith." In 1889 there was an act passed: An act to amend section 2 of chapter 94 of the general laws for the year 1881, relating to corporations. (Laws 1889, c. 228.) By this amendment there was sought to be added to and incorporated in the law these words: "Any railway company of this state may, also, for any other purpose authorized by its act or articles of incorporation, create, issue and dispose of such amounts of stock as the boards of directors may find necessary for such purpose." This provision is continued in R. L. 1905, § 2899: It (any domestic railroad company) may also create, issue and dispose of such amounts of stock for any other authorized purpose as the board of directors may find necessary. Chapter 228, the amendatory act of 1889, carried the following provisos, to wit: Provided, that nothing contained in this act shall authorize any railway company to sell its capital stock for less than full par value thereof in money, property, work or services. Provided, further, that nothing in this act shall be so construed as to authorize the issuance or sale of any stock or bonds by any such company, or the performance of any act prohibited by chapter 12 of the general laws of 1887, or by any other law of this state relating to the issuance or sale of the stock and bonds of any railway company therein.

The same qualification is found in the law as it appears in R. L. 1905, § 2899, in the concluding words thereof, which are as follows: But no railroad company shall sell its capital stock for less than its full par value  *  *  *  and no such company shall issue or sell any stock or do any act prohibited by any other law relating to such matters.

We now confidently assert that section 2872 has not been repealed, or even modified by section 2899, because of the following reasons:

1. Absence of repugnancy. If there were an apparent, though not a real conflict, between the two sections some difficulty might confront us. But no such difficulty is present because there is not even a seeming conflict. In sections 2899 and 2872 we have simply the granting of a power with a restriction placed upon the exercise thereof. Nothing can be simpler. No two provisions of the statutes relating to the same subject, when read together, are freer from ambiguity or conflict. Both, with propriety and clearness, could be incorporated in the same act or chapter. It cannot be said that section 2872 to any extent takes away the power granted by section 2899. The former simply extends and asserts the visitorial power of the state over the exercise of the power granted by the latter. Any meritorious proposed issue must be allowed, and from its disallowance by the commission the railway company may appeal to the courts. R. L. 1905, § 1971. It is folly, therefore, to assume that the legislature intended to except such increases from the operation of section 2872. The requirement that a copy of the resolution of the directors increasing the stock should be filed was for the purpose of having a record of the increase and its purposes with the other corporation records in the office of secretary of state. Nothing can be more obvious than that an act requiring the public record of a resolution, and an act requiring the approval by public officials of the same resolution, can stand together.

2. Section 2899 is not a substitute. If it were a substitute for section 2872, section 2899 might be considered as a repeal thereof. The two sections relate to different subjects, 2872 providing for state regulation of stock increases and section 2899 conferring the power to increase stock for purpose of consolidation and making an added requirement as to such increases, the filing of a copy of the resolution with the secretary of state.

3. The saving clause attached to section 2899 subordinates this section to all other laws upon the subject, and emphatically expresses the legislative will that the power to increase stock must be exercised subject to the restrictions of section 2872. What other purpose could be served by the clause either in the law of 1889 or the code? In

each case the "watering" of the stock was attempted to be provided against by directing that it should be sold at its full par value. There is nothing left to which the saving clause could apply except the application to, hearing before, and consent of the commission. Counsel have invoked the rule of ejusdem generis. They claim that the words "any other law relating to such matters" mean only the laws prohibiting the sale of stock "for less than its full par value in money, property, work or service." That this is too narrow a construction is conclusively shown by the above reference to the law of 1889.

4. Implied repeals not favored. No rule is more elementary or better founded in reason and authority than that the courts will give effect, if possible, to all laws in pari materia, avoiding, whenever possible, by all means at their disposal, the implied repeal of an earlier law. State v. McCardy, 62 Minn. 509, 516; 1 Sutherland, Stat. Con., 464; Supervisors of Town of Maple Lake v. Board of Comrs. of Wright County, 12 Minn. 287 (403); Moss v. City of St. Paul, 21 Minn. 421; Beal v. White, 28 Minn. 6; State v. Harris, 50 Minn. 128, 135; Brown v. Village of Heron Lake, 67 Minn. 146; State v. Lindquist, 77 Minn. 540; Gaston v. Merriam, 33 Minn. 271, 283; Powell v. King, 78 Minn. 83.

5. Other considerations. There are many considerations of "conveniences, justice and reasonableness" obviously repugnant to an implied repeal or even modification of section 2872. In addition to those already considered are these: (a) The absence of a repealing clause. (b) The affirmative nature of the later law. (c) The short time elapsing between the enactments of the original laws. (d) Section 2872 is in line with the long established policy of the state. (e) The repeal would tend to render innocuous state regulation of railroads. (f) The continuation of the law in the code.

6. However considered, that portion of section 2899, which is an apparent blanket authority for the issue of stock, is inoperative except as to issues of stock for purposes of consolidation. It cannot operate to repeal any prior law because originally (if not now) unconstitutional. The title of chapter 94 of the general laws of 1881, as well as all of its provisions, restricted the scope of the law as to the purchase or control or consolidation of one road by or with another. The act of 1889, being entitled: "An act to amend" section 2 of the 1881 law,

was therefore restricted to legislation cognate to the substance and title of the original act. In such cases, the sufficiency of the title, and therefore the constitutionality of an amendatory act, depends upon the title of the original act and also upon the nature and extent. If any portion of the amendatory act is beyond the scope of these, or either of them, it falls as unconstitutional, being a violation of section 27, art. 4 of the state constitution. State v. Smith, 35 Minn. 257; State v. Madson, 43 Minn. 438; State v. Porter, 53 Minn. 279; Watkins v. Bigelow, 93 Minn. 210, 222. Nothing is more obvious therefore than the original unconstitutionality of this blanket clause, viz.: Any railway company of this state, may, also, for any other purpose * * * issue and dispose of such amounts of stock as the boards of directors may find necessary for such purpose. The operation of this amendment was restricted, by the title of the original act, to the purpose thereof, i. e., consolidation.

There is good reason and some authority for concluding that this restricted operation of the law was not enlarged by its inclusion in the code, which is not a re-enactment but a continuation only, of such old laws as are substantially reproduced therein. R. L. § 5508. The continuation of invalidity results only in invalidity. You cannot produce a valid law by merely continuing an invalid one. The mere continuation in a revision, or elsewhere, of a law which has a restricted meaning, e. g., chapter 228, laws of 1889, does not change or add to its meaning. 2 Sutherland, Stat. Con. 859; Comer v. State, 103 Ga. 69.

As to the alleged "practical construction" to which appellant appeals. The proposed sixty million dollar increase is for general purposes. It appears from the complaint that all prior increases were for like purposes and not confined to consolidation purposes. Now as to all stock increases except those for consolidation, section 2899 is obviously and confessedly unconstitutional. At least it was unconstitutional until March 1, 1906, when it became part of the code. The unconstitutionality was conceded in one of the briefs filed on behalf of appellant in the district court. Yet it is asserted that through a practical construction of this unconstitutional law, defendant has been given power to increase its capital stock without applying to and procuring the consent of the railroad and warehouse commission. To

100 M.—30

state the proposition is to demolish it. Moreover it is discreditable alike to a former attorney general and the former general counsel of appellant, both of whom are now deceased, to say that they proceeded upon any such absurd basis. We unhesitatingly assert that the inaction of the railroad and warehouse commission with reference to former stock issues, whether it was or was not advised by any attorney general, was based upon chapter 43, laws 1893 (G. S. 1894, §§ 3398, 3399) a law which would form a much more plausible ground for the alleged "practical construction" than section 2899 with its grossly unconstitutional feature. The law of 1893 has been repealed (R. L. 1905, § 5540), so that it does not affect the case. By such repeal the alleged practical construction is made of no avail to the appellant.

B. The main point urged by counsel for appellant, and the only one really entitled to any serious consideration, is the claim that section 2872 is unconstitutional because it delegates legislative powers to the commission.

We concede that as a general proposition there is no question about the correctness of the constitutional rule that the law-making power cannot be delegated, but we are wholly unable to see what application it has to the facts in this case. In all of his long list of authorities counsel has referred to no case that, in the slightest degree, resembles the one at bar. We are not asking in this case that the commission be permitted to make any new law. If the remedy we are seeking to invoke is not already authorized by an existing law, our case must as a matter of course fall.

There are many legislative powers that may be delegated, and counsel fails wholly to distinguish between them and the law-making power of the legislature. It is not every grant of powers, involving the exercise of discretion and judgment, to executive or administrative officers, that amounts to a (prohibited) delegation of legislative power. State v. Chicago, M. & St. P. Ry. Co., 38 Minn. 299; Stone v. Yazoo, 62 Miss. 607; Stone v. Farmers' Loan & Trust Co., 116 U. S. 307; Chicago, M. & St. P. Ry. Co. v. Minnesota, 134 U. S. 418; State v. Crosby, 92 Minn. 180; State v. Wagener, 77 Minn. 501.

The power to exercise supervision over public-service corporations

by means of boards or commissions in whom wide discretionary pow-
ers are vested, by whatever name it may be called, is in fact a delega-
tion of "legislative authority." It is so designated in the foregoing
opinion of the federal supreme court. The practice has now become
a fixed principle in American governmental administration, upheld
not only by the federal supreme court, but by the courts of last re-
sort in the several states. It is among the things which the legisla-
ture "might properly but cannot conveniently or advantageously do
itself." Jacobson v. Wisconsin, M. & P. R. Co., 71 Minn. 519;
Wisconsin, M. & P. R. Co. v. Jacobson, 179 U. S. 301; Munn v.
Illinois, 94 U. S. 113.

The right to fix the price for the use of a public (railroad) highway,
includes the right to supervise and control everything entering into
the enterprise which affects the value of the use. Nothing so directly
affects that question as the capitalization of a railroad company. The
capitalization theoretically represents the actual investment. The ac-
tual value only of the improvements made upon the highway by the
railroad company should be represented by the stocks and bonds upon
which the public are to be asked to pay dividends and interest. Rea-
sonable railroad rates must pay the actual cost of operation and a rea-
sonable return upon the money invested in the road. How is the
amount of the investment to be determined? Railway companies, as
a rule, have in their organization a series of wheels within wheels.
They have construction companies composed of favored stockholders,
and proprietary companies, and subsidiary companies and holding com-
panies, ad infinitum. If the public is to be adequately protected against
the jugglery of high finance, how else can it be effectively done than
by the state exercising a supervisory power over the creation of the
capitalization of such companies, so that when it exercises its conceded
power to fix reasonable and maximum rates, it may be in a position to
do so intelligently, and with fairness both to the public who pay rail-
road rates and to the stockholders who are entitled to receive a fair
income on their investment.

We may be excused for suggesting that no case could possibly arise
which more strictly calls for the exercise of public surveillance over
a stock issue than is presented in the case now before the court. The
purpose of the proposed issue is attempted to be stated in the answer

of the defendant, and is repeated herein (see statement of the case preceding the briefs). The purpose, as it is declared in subdivisions 1 and 2 (see pp. 446, 447, supra), seems appropriate enough, but subdivision 3 gives the public to understand that the money from the stock to be issued is to be used in buying the stocks of a large number of wholly unknown companies, some of which are incorporated in different sister states, and some in the Dominion of Canada, without any explanation whatever as to either the propriety or necessity of the proposed purchase, or any statement as to who is to fix the selling price, or as to how many of the officers and directors of the Great Northern own the stocks so to be purchased. But section 4 is the one which would seem to intimate that the railroad company is going into the business of purchasing securities generally upon the market, without the slightest indication that the stocks so to be purchased have any connection with the enterprise for which the railway company was chartered, or that they are anything more than mere proposed stock-jobbing undertakings.

When section 2872 was first enacted (being chapter 265, laws 1887) it contained a provision that this act should become a part of the charter of every domestic railway company. This provision necessarily means that in the administration of this law and in the determination of the questions that are to be passed upon by the commission, they were, primarily, to see to it that all proposed increases of capital stock were to be used for the purposes authorized by the company's charter, and that the amount of the increase should not be disproportionate to the company's needs as defined by the charter. The only other duty that would suggest itself as being within the contemplation of the legislature in the passage of the act, would be to see that all of the provisions of the general laws of the state, especially the provisions against the issuance of fictitious stock, were complied with, and no doubt the legislature also had in mind the necessity for guarding against that insidious false capitalization which might arise out of the practice on the part of a railway company of buying the stocks of other nominal companies, owned by the same stockholders, so that parties contributing to the purchase of the stock of the parent company could have the money returned to them, by the sale to the company of other stocks owned by them which had been acquired without consideration.

When counsel suggests that this section standing alone is defective in not designating the facts that were to be considered and passed upon by the commission, he is asking the court to apply a rule which could be successfully urged against many of our most salutary laws. In construing a statute of this kind the court should, in our opinion, regard all of our railroad legislation as being a distinct body of the law, resort to all of which must be had in order to correctly understand the policy of the state with reference to this most important subject. Many of our enactments were passed with distinct reference to the laws on the same subject which already existed, although such reference might not have been recited in the act by the legislature. Why could not the same objections that are made here be urged with equal force against the law authorizing the commission to require track connections and prescribe joint through rates, and also determine the proportion thereof to which each company is entitled? No method of procedure is laid down by that act, and no fact stated upon which any of the numerous things to be considered should be made to depend. The exercise of the unlimited discretion conferred by that law has been upheld both by this court in 71 Minn. 519, 532, and in the federal supreme court, 179 U. S. 287.

The fact that railroads are public highways, suggests the appropriateness of comparing this law with the laws relating to other highways, and it is fortunate that in so doing we find an immediate solution of the alleged imperfection of this section, when standing alone, and find a complete justification for the foregoing suggestion that any deficiencies found in this section can be supplied by intendment, by resort to other laws of the state on the same subject. In the case of Hurst v. Town of Martinsburg, 80 Minn. 40, the court had before it the law relating to the laying-out of what is known as a "town line road," the constitutional validity of which law was assailed. The court, speaking through Justice Brown, said: "The several provisions of the chapter, so far as applicable to the subject in hand, are not as full and complete as well-considered and carefully-prepared statutes might be made, but omissions as to the mode and manner of conducting the proceedings thereby authorized may be supplied by intendment."

In the assertion of its alleged untrammelled right to issue stock free

from state supervision, appellant is met by and must overcome the rule that a grant of power to a corporation is to be strictly construed against it, and "nothing will be presumed to pass by the grant unless it be expressed in clear and unambiguous language." "Every reasonable doubt is to be resolved adversely. Nothing is to be taken as conceded but what is given in unmistakable terms." Pearsall v. Great Northern Ry. Co., 161 U. S. 646, 664; Fertilizing Co. v. Hyde Park, 97 U. S. 659.

START, C. J.

This is an appeal by the defendant from an order of the district court of the county of Ramsey granting a temporary injunction restraining the defendant from making any increase in its capital stock without the consent of the Railroad and Warehouse Commission of the state, as provided by R. L. 1905, § 2872. The order was made upon the allegations and admissions of the bill and answer, which, so far as here material, are to the effect following:

The defendant is a corporation duly organized under and by virtue of chapter 160, p. 294, of the Laws of 1856, and acts amendatory thereof. The maximum limit of the capital stock of the defendant was by its original charter fixed at $30,000,000. By an amendment to its charter (Sp. Laws 1865, p. 35, c. 4, § 10) it was given power "to create and issue in such manner and on such terms as it may deem expedient one or more classes of preferred stock," "and to make such agreements as it may deem proper with the respective holders thereof as to the dividends thereon." The defendant prior to this amendment was not authorized to issue preferred stock.

The defendant is authorized to construct, own, and operate railroads, and to acquire other lines of railway running in the same general direction and make them a part of its railway system. It may acquire for this purpose the stock and bonds of other railroads which are not parallel and competitive with its existing lines. It has, in order to secure funds for such purposes, from time to time increased, sold, and issued shares of its capital stock aggregating the par value of $125,-000,000. This increase has been made in the manner prescribed by chapter 228, p. 360, Laws 1889 (R. L. 1905, § 2899), without asking or obtaining the consent of the railroad and warehouse commission,

hereinafter referred to as the "commission," and in no case were any objections made by the commission, or any other officer of the state, although the defendant filed in each case with the secretary of state a duly authenticated resolution of its board of directors stating the number and par value of the shares of stock and the purposes for which they were to be issued.

On December 11, 1906, defendant determined to increase its capital stock to the extent of six hundred thousand shares, of the par value of $60,000,000, for the purpose of providing funds for such further and additional equipment, terminals, and facilities, including second main track on existing lines, as may be necessary from time to time, and to acquire the bonds or stock of certain allied lines of railway, with other securities, as its board of directors may from time to time authorize. It caused a duly authenticated resolution of its board of directors, stating the purpose of such increase of stock and the number and par value of the shares, to be filed in the office of the secretary of state, and it was about to sell and issue the stock in the same manner it had been accustomed to do in the past, when on December 27, 1906, this action was begun by the state to restrain such action until the consent of the commission to such increase of stock shall have been obtained, in accordance with R. L. 1905, § 2872. It being the admitted purpose of the defendant, unless restrained by the court, to carry into effect its plan for the increase of its capital stock without first obtaining the consent of the commission, it follows that the order of the district court restraining such action was right, if there be any valid statute of this state forbidding such increase without such consent; otherwise, it was not.

It is the contention of the state that there is such a statute, namely, R. L. 1905, § 2872, which reads as follows:

> Before any railroad corporation shall increase its capital stock, it shall apply to the railroad and warehouse commission in writing, setting forth the amount of the proposed increase, and the purpose for which it is desired. The commission shall thereupon fix a time and place for hearing the application, and require such notice thereof to be given as they deem reasonable. Upon the hearing the commission shall make findings

of the facts established in reference to the proposed increase, and, if they allow it, shall prescribe the manner in which and the terms upon which the same shall be made. If they disapprove such increase, the reasons therefor shall be stated in their next annual report. No capital stock shall be issued by any railway corporation until the full amount thereof has been paid to the corporation in money, labor, or materials actually used in the construction of its road, nor shall the capital stock of any such corporation be increased except by special authority of such railroad and warehouse commission.

The original of this statute is chapter 265, p. 384½, Laws 1887. Some two years after its enactment another statute was passed (chapter 228, p. 360, Laws 1889; R. L. 1905, § 2899), which is substantially as follows: Any domestic railroad company authorized by law to consolidate its property with the property and franchises of any other railroad company, or to purchase the railroad property and franchises of any other railroad company, may effect such consolidation or purchase by acquiring the stocks, bonds and other securities of such other railroad company, and for the special purpose of acquiring the same may create, issue and dispose of its own stocks, bonds or other securities, in addition to the amounts it is otherwise authorized to issue to an amount not exceeding the value of the stocks or bonds of such other company acquired by it. "It may also create, issue and dispose of such amounts of stock for any other authorized purpose as the board of directors may find necessary." Prior to the issue of any stock, the corporation shall file with the secretary of state a duly authenticated resolution of its board of directors stating the number and the par value of the shares to be issued, and the purposes of such issue. But no railroad company shall sell its capital stock for less than its full par value in money, property, work or services, and no such company shall issue or sell any stock or do any act prohibited by any other law relating to such matters.

It is the contention of the defendant that section 2872 was by necessary implication repealed or modified by section 2899, to the extent, at least, of excepting the provisions for an increase of capital stock provided for by section 2899 from the provisions of section 2872, re-

quiring the consent of the commission to any increase of capital stock, and, further, that section 2872 in any event is unconstitutional. On the other hand, it is urged on behalf of the state that section 2872 is constitutional, that it has not been repealed or modified in the respects claimed by the defendant by section 2899, and further, that so much of section 2899 which provides that any corporation of the class therein designated "may also create, issue and dispose of such amounts of stock for any other authorized purpose as the board of directors may find necessary," is unconstitutional because it is not germane to the title of the original act.

Sections 2872 and 2899 were re-enacted at the same time by an act known as the Revised Laws of 1905 which was correctly entitled. See report of Revision Commission, p. 4. It follows that it is unnecessary now to inquire whether any part of section 2872 was modified or repealed when section 2899 was originally enacted, for it was competent for the legislature to re-enact a statute which had been repealed; or to inquire whether any part of section 2899 as originally enacted was unconstitutional because of a defect in the title of the act, for, if it were so, it was competent for the legislature to re-enact it under a proper title as it did. The sole question is whether or not section 2872 is constitutional.

The terms and conditions upon which railway corporations may be created, the powers and capital stock they may have, the purposes for which they may increase their capital stock, and the limitations and conditions to be imposed upon the right to such increase, are exclusively matters for legislative action, which cannot be delegated. The state having created such corporations and conferred upon them for public purposes great and extraordinary powers and franchises, including the sovereign power of eminent domain and the right to levy tolls or taxes upon all who use for traffic or travel the modern highways, the railroads, it logically follows that the legislature has the undoubted right to enact statutes regulating the increase and disposition of their capital stock.

In the exercise of this right it may pass a statute providing generally for what purposes and upon what terms, conditions, and limitations an increase of capital stock may be made, and confer upon the commission the administrative duty of supervising any proposed increase

of stock. It may also delegate to the commission the duty of finding the facts in each particular case, and authorize and require it, if it find the existence of facts that bring the case within the statute, to allow the proposed increase; otherwise, to refuse it. Any statute, however, which attempts to authorize the commission in its judgment to allow an increase of the capital stock of a corporation for such purpose and on such terms or conditions as it may deem advisable would be a delegation of legislative power and void. Section 1, art. 3, of the state constitution.

Statutory regulations of the increase of the capital stock of railway corporations tend to prevent secrecy of operation and accounts, and the issue and sale of fictitious or watered stock, by such public agencies. While such stock cannot be taken into consideration in determining what are reasonable rates for railway services (Steenerson v. Great Northern Ry. Co., 69 Minn. 353, 72 N. W. 713), yet the practice of issuing and selling such stock is an admitted evil, a commercial crime. It is, and has been since the year 1887, a felony, punishable by imprisonment in the state prison, or by fine, or both, for any officer of a corporation in this state to issue, sell, or dispose of any fictitious shares of its capital stock, or to issue any of its stock or bonds until they have been paid for in full to the par value actually received in money, labor, or property. Laws 1887, p. 68, c. 12; R. L. 1905, § 2911. We have, then, no question as to the iniquity of issuing fictitious railway stocks and bonds, or as to the right of the legislature to regulate the increase of the capital stock of railway corporations so as to prevent the commission of such felony, or, if committed, to aid in its detection and punishment. All this is practically conceded. The question here is, has the legislature by a valid statute regulated the increase of capital stock, and forbidden it unless it is allowed by the commission?

The defendant claims that the statute (section 2872) is unconstitutional because it violates the obligations of the contract between the defendant and the state, in violation of article 1, § 11, of the constitution of the state of Minnesota, and article 1, § 10, of the constitution of the United States. The argument in support of this claim is to the effect that by the amendment to its charter, giving it the right to create and issue one or more classes of preferred stock, it was given

the absolute right to issue such stock without restriction or limit, and that the statute in question attempts to impair such vested right. If the amendment could be construed as conferring upon the defendant the power to issue stock without limit, nevertheless the legislature would have the right to prescribe such reasonable regulations for the exercise of the right as might be necessary to prevent fraud in the issuing of fictitious stock and to protect the public from the consequences thereof; for the police power of the state cannot be abdicated. State v. St. Paul, M. & M. Ry. Co., 98 Minn. 380, 108 N. W. 261. It is, however, obvious from a reading of the entire amendment that it was not intended to grant to the defendant the right to increase its capital stock beyond the original limitation of $30,000,000, but that the intention was simply to authorize it to issue a preferred class of its authorized capital stock, a right it did not before possess. We hold that section 2872 does not violate the obligations of any contract between the defendant and the state.

It is further urged that the statute is unconstitutional, because it is an attempt to delegate legislative power to an administrative body, the commission; that it purports to confer upon the commission the power to determine whether or not a corporation shall have the right in any case to increase its capital stock, and for what purposes, in what amount, and upon what terms and conditions it will authorize such increase, if at all. The position of the state on this question is, in effect, that the statute does not attempt to delegate to the commission any legislative function, but refers to it the administrative duty of supervision of the increase of stock authorized by law, by ascertaining the facts in each particular case, and, if the facts show that the proposed increase of stock is authorized and in accordance with the requirements of law, then the commission must allow it; otherwise, refuse it. There is little, if any, controversy between the state and the defendant with reference to the law applicable to this particular question; but they differ radically in the construction of the statute. If the construction given to the statute by the state is a permissible one, it is constitutional. On the other hand, if its unambiguous language will not justify any other construction than the one urged by the defendant, it is unconstitutional. A brief reference to some of the adjudged cases will aid us in construing the statute.

In the case of State v. Young, 29 Minn. 474, 9 N. W. 737, it was held "that except where authorized by the constitution, as in respect to municipalities, the legislature cannot delegate legislative power; cannot confer on any body or person the power to determine what shall be the law. The legislature only must determine what it shall be." The court applied the rule, and held that a statute providing for the adjustment of the Minnesota state railroad bonds was unconstitutional, because it delegated to a commission of judges therein named the power by its decision to determine which one of two sections of the statute should be operative; that is, the law.

The rule was reaffirmed and applied in the case of State v. Chicago, M. & St. P. Ry. Co., 38 Minn. 281, 37 N. W. 782. The statute considered in that case (section 8, c. 10, p. 53, Laws 1887) authorized the railroad and warehouse commission to find and determine whether the tariffs of rates, fares, charges, or classification, or any part thereof, filed and published by any common carrier, were equal and reasonable, and, if they were not, to compel the carrier to make them so. The question whether this statute delegated legislative powers to the commission was raised, and this court held that there was no attempt to delegate to the commission the power to determine what the law should be, and that in this respect the statute was constitutional. While the judgment of this court was reversed on another point in the Supreme Court of the United States (Chicago, M. & St. P. Ry. Co. v. Minnesota, 134 U. S. 418, 10 Sup. Ct. 702, 33 L. Ed. 970), yet so much of the decision as relates to the question of what is and what is not a delegation of legislative power has never been questioned, and it is the law of this state.

The opinion of the court was delivered by Mr. Justice Mitchell, in which the distinction is ably and clearly marked between legislative powers, which may not be delegated, and administrative duties, the performance of which is essential for the execution of the law, and which may be delegated. He said:

"It is, of course, one of the settled maxims in constitutional law that the power conferred upon the legislature to make laws cannot be delegated by that department to any other body. Where the sovereign power of the state has located the authority, it must remain. The department to whose judgment and wisdom this high prerogative has

been intrusted cannot relieve itself of the responsibility by choosing other agencies and substituting their judgment and wisdom for its own. * * * The authority that makes the laws has large discretion in determining the means through which they shall be executed and the performance of many duties which they may provide for by law they may refer to some ministerial officer specially named for the duty. * * * The principle is repeatedly recognized by all courts. that the legislature may authorize others to do things which it might properly, but cannot conveniently or advantageously, do itself. All laws are carried into execution by officers appointed for the purpose, some with more, others with less, but all clothed with power sufficient for the efficient execution of the law. These powers often necessarily involve in a large degree the exercise of discretion and judgment, even to the extent of investigating and determining the facts, and acting upon and in accordance with the facts as thus found. In fact, this must be so, if the legislature is to be permitted effectually to exercise its constitutional powers. If this was not permissible, the wheels of government would often be blocked, and the sovereign state find itself helplessly entangled in the meshes of its own constitution. * * * The difference between the power to say what the law shall be, and the power to adopt rules and regulations, or to investigate and determine the facts, in order to carry into effect a law already passed, is apparent. The true distinction is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and the conferring an authority or discretion to be exercised under and in pursuance of the law."

The court then proceeded to apply the test indicated to the statute then under consideration, and held that it did not attempt to delegate legislative powers to the commission, or to invest it with any discretion as to what the law should be, but simply charged it with the administration of the statute, which became a complete law upon its enactment. Or, in other words, the legislature by the statute declared that all freight and passenger rates should be equal and reasonable, and merely imposed upon the commission the administrative duty of determining whether the charges of a carrier in any particular case were or were not equal or reasonable; that is, to determine whether it was or was not obeying the law, and, if not, to compel its obedience by

enforcing rates which the facts found might show to be reasonable.

Another leading case in this state upon the question under consideration is that of Anderson v. Manchester Fire Assur. Co., 59 Minn. 182, 60 N. W. 1095, 63 N. W. 241, 28 L. R. A. 609, 50 Am. St. 400, which involved the question of the constitutionality of Laws 1889, p. 345, c. 217, which authorized and directed the insurance commissioner to prepare and file in his office a form of fire insurance policy, together with such provisions, agreements, or conditions as might be indorsed thereon, which should be known as "Minnesota Standard Policy," and further provided that after a given date all insurance contracts should conform in all particulars with such form. The court in that case approved the rule and applied the test given in State v. Chicago, M. & St. P. Ry. Co., 38 Minn. 281, 37 N. W. 782. The court held the statute unconstitutional, because it attempted to delegate to the insurance commissioner the legislative duty of determining what provisions of insurance contracts should and should not be valid.

The cases we have referred to have been followed and approved, and the distinction between the delegation of legislative powers and administrative duties observed, in the following cases: State v. Copeland, 66 Minn. 322, 69 N. W. 27, 34 L. R. A. 777, 61 Am. St. 410; State v. Wagener, 77 Minn. 501, 80 N. W. 633, 778, 1134, 46 L. R. A. 442, 77 Am. St. 681; McGee v. Board of Co. Comrs. of Hennepin County, 84 Minn. 472, 88 N. W. 6.

If this distinction is kept in mind, as we read the statute here in question, it is clear from its plain and specific language that it was not the intention of the legislature thereby simply to delegate to the commission the administrative duty of determining the facts on each application of a corporation to be allowed to increase its capital stock, and, if the facts brought the application within the terms, conditions, and limitations upon which existing statutes authorized an increase, allow it; otherwise, deny it. If the legislature had any such purpose in enacting the statute, great pains were taken to conceal the intention by using words which explicitly commit the question of the increase of capital stock of a railroad corporation in any and all cases to the exclusive judgment and discretion of the commission. The statute declares that before any such corporation shall increase its capital stock it shall apply to the commission in writing, setting forth

the amount of the proposed increase and the purpose for which it is desired. The commission must then fix a time and place for hearing the matter and give notice thereof. Upon the hearing the commission must make a finding of the facts established in reference to the proposed increase. What must they then do? Must they allow the increase if they find that "the amount of the proposed increase and the purpose for which it is desired" are such as are authorized by law? Certainly not. There is no such provision in the statute. The language of the statute cannot by any fair or permissible construction be so read. On the contrary, the language used is: "If they allow it (the application for an increase of stock), they shall prescribe the manner in which and the terms upon which the same shall be made. If they disapprove such increase, the reasons therefor shall be stated in their next annual report." Nor shall the capital stock of any such corporation be increased, except by special authority of such commission. The prescribing "the manner in which and the terms upon which" the capital stock of railway corporations may be increased is a legislative power, not an administrative duty, and cannot be delegated. And yet this is just what the legislature attempted to do by this statute, unless the words we have quoted can be read out of it, and the omitted provisions we have indicated be read into it, by construction. It is only by arbitrarily so construing the statute that we can hold that it authorizes the commission to supervise the issuance of only such stock as is authorized by law, and to charge them with the duty of ascertaining in each case whether the proposed increase is for an authorized purpose and in accordance with the requirements of the law.

As we have suggested, if the statute fairly may be so construed, it is constitutional; but it is impossible so to construe it without disregarding its plain and unambiguous language. The simple truth seems to be that the distinction between the delegation of administrative duties to secure the execution of a statute did not occur to the person who drafted this statute, and that it was the real, as well as the expressed, intention of the statute to commit the whole subject of the increase of capital stock by railway corporations to the judgment and discretion of the commission. This view is strengthened by the fact that at the time the statute was enacted railway corporations were au-

thorized to increase their capital stock, but there was no statute limiting the increase to any particular purposes or prescribing the terms upon which such increase might be made. Such increase could be made by the action of the stockholders and directors of the corporation, whenever in their opinion the increase was required by the corporation, by an amendment of its articles of incorporation, or, in case the corporation was one whose charter was a special law, by filing a certificate of increase with the secretary of state. Chapter 5, p. 10, Laws 1883. The legislature having never enacted any terms, conditions, or limitations with reference to the increase of capital stock, it could not consistently impose upon the commission the duty of ascertaining whether the purpose and terms of a proposed increase were in accordance with the requirements of law, when there was no such law. But the fact that there was no statute prescribing the purpose, terms, and conditions of a proposed increase of stock suggests a reason why the whole matter was committed to the judgment and discretion of a commission, under the mistaken belief that such duty could be delegated.

It is interesting in this connection to compare this statute (section 2872) with what appears to be its prototype (sections 3663–3665, G. S. [Conn.] 1902). It will be noted that the material provisions of the two statutes are the same, except that the railroad commissioners in Connecticut, after finding the facts, report them, with a recommendation whether the increase of stock should be allowed or not, to the legislature for its determination; but by our statute the whole matter, including the legislative power to determine whether there shall in any case be an increase of stock, is delegated to the judgment and discretion of the commission.

While an act of the legislature should never be held unconstitutional, except in cases where the conflict between the statute and the constitution is clear, manifest, and irreconcilable by any reasonable construction, yet, when it so conflicts with the constitution, courts have no alternative except to declare it invalid, for the obligation of courts to support the constitution is unceasing and imperative. This is such a case. The statute under consideration is so clearly an attempt to delegate to the commission the legislative power to determine in its judgment and discretion whether or not there shall be an increase of

the capital stock of a corporation in any case, and to prescribe the manner in which and the terms on which the same may be made, if allowed, that we must, and do, for that reason hold it to be unconstitutional.

It follows that the order appealed from must be reversed; and it is so ordered.