BOSTON & M. R. R. v. NILES et al.

(District Court, D. New Hampshire. November 27, 1914.)

No. 71.

1. COURTS (§ 489*)—FEDERAL AND STATE COURTS—COMITY.

 The rules of comity existing between the federal and state courts mean something more than rules of convenience, and, while a federal court has undoubted jurisdiction of a suit to determine the constitutionality of a state statute, except in extreme and exceptional cases the state court, which has concurrent jurisdiction and on which the Constitution and laws of the United States are equally binding, is the appropriate court to deal with the question in the first instance.

 [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 404, 1324–1330, 1333–1341, 1372–1374; Dec. Dig. § 489.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. Courts (§ 489*)—Federal and State Courts—Comity—Suit to Enjoin Enforcement of State Statute.

A statute of New Hampshire dealing with the subject of railroad fares also created a public service commission, with judicial powers to carry out its provisions. The act provided that, in case a petition for rehearing on any matter should be denied by the commission, an appeal should lie to the Supreme Court of the state. A railroad company filed a petition for rehearing after a decision by the commission, raising the issue of the constitutionality of the statute, which petition was denied. Thereupon the company commenced a suit in the federal District Court, alleging that certain provisions of the statute were discriminatory on their face and unconstitutional. *Held* that, having first invoked the jurisdiction of the state tribunals, the federal court would not pass on the constitutionality of the statute, or grant an injunction restraining its enforcement, until the company had exhausted its remedies in the state courts, but that until such time the cause should be held in abeyance.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 404, 1324–1330, 1333–1341, 1372–1374; Dec. Dig. § 489.*]

In Equity. Suit by the Boston & Maine Railroad against Edward C. Niles and others, constituting the Public Service Commission of New Hampshire, and James P. Tuttle, Attorney General. On motion for injunction. Cause held in abeyance.

Streeter, Demond, Woodworth & Sulloway, of Concord, N. H., for plaintiff.

James P. Tuttle, Atty. Gen., of New Hampshire, for defendants.

Before DODGE and BINGHAM, Circuit Judges, and ALDRICH, District Judge, sitting under the provisions of section 266 of the Judicial Code of the United States (Act March 3, 1911, c. 231, 36 Stat. 1162 [Comp. St. 1913, § 1243]).

ALDRICH, District Judge. [1] While we do not doubt the jurisdiction of United States courts, or their power to entertain questions like these here, in an original and independent proceeding instituted for the purpose of testing the constitutionality of state statutes, which it is claimed conflict with the federal Constitution, we do think that such a proceeding in certain circumstances is subject to being controlled or influenced by preliminary considerations involved in rules of comity existing under our judicial system, and these rules are now accepted as meaning something more than rules of convenience.

It was pointed out in the Houseman Case, 93 U. S. 130, 136, 137, 23 L. Ed. 833, that, while the jurisdiction of the federal courts was the jurisdiction of a paramount sovereignty, the laws of the United States are laws in the several states, and just as much binding on the citizens and courts thereof as the state laws; that legal and equitable rights acquired under either system may be enforced in any court of either sovereignty competent to hear and determine; that in respect to matters, though federal, unless otherwise provided, a remedy may be had upon proper proceedings in the state court, because, though the state courts derive their existence and functions from the state laws, such courts are subject also to the laws of the United States

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and just as much bound to recognize these as operative within the state as they are to recognize the state laws; that the two together form one system of jurisprudence, which constitutes the law of the land for the state; and that there is no reason why the state courts should not be open for the prosecution of rights growing out of the laws of the United States to which their jurisdiction is competent and not denied. It has come to be pretty generally understood, we think, that state courts, in respect to federal rights involved in a proper proceeding before them, are under the same duty to enforce the federal law as that which imposes itself upon the federal courts. This is because the federal law is a part of their own system, and the state courts have gone as far in saying this as the federal courts.

Still in respect to the question as to where remedy shall be had for supposed invaded rights, which depend upon the federal Constitution or upon a state Constitution, or partly upon both, as well as in respect to other rights about which jurisdiction is concurrent, much depends upon the question as to where the proceeding to establish the right is first instituted.

In the case of Covell v. Heyman, 111 U. S. at page 182, 4 Sup. Ct. 358, 28 L. Ed. 390, the Supreme Court said:

"The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity, with perhaps no higher sanction than the utility which comes from concord; but between state courts and those of the United States, it is something more. It is a principle of right and of law, and therefore of necessity. It leaves nothing to discretion or mere convenience. These courts do not belong to the same system, so far as their jurisdiction is concurrent; and, although they coexist in the same space, they are independent, and have no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and when one takes into its jurisdiction a specific thing, that res is as much withdrawn from the judicial power of the other, as if it had been carried physically into a different territorial sovereignty."

The reasoning to which we have referred is very general, and has reference to all rights in respect to which there is concurrent jurisdiction. The result of the reasoning of this case, and others, is that when rights have been put at issue in a state court, even though the right of ultimate review may reside with the court of paramount sovereignty, rules of comity require that the state court whose process has been first invoked shall have a free hand under the presumption that the right will be suitably established, and this view is understood to hold good until the reasonable remedies in the state courts have been exhausted and a decision reached which aggrieves one of the parties, and then, if the supposed grievance is based upon the idea that the decision conflicts with the paramount federal law, he may have his review upon writ of error from the Supreme Court to the state court, and perhaps, in exceptional circumstances, through independent proceedings instituted in the lower federal courts.

While this reasoning applies to litigation in a broad sense and to general rights, it has especial force in cases which involve the validity of a state statute which has not been passed upon by the state courts,

and where the federal courts are invoked to pass in the first instance upon the question whether it is in conflict with the spirit of either the federal or a state Constitution. In respect to such situations, the Supreme Court has set forth over and over again that, except in extreme and exceptional cases, the state court is the appropriate court to have the first opportunity to determine whether its statutes are good or bad in a constitutional sense. And, moreover, where state statutes relate to general rights, unless they conflict with the provisions of the federal Constitution, it has been repeatedly said that the state court's interpretation or construction will generally be accepted as final, and would only be departed from, if at all, with reluctance.

[2] This case involves the single question of the validity of a state statute, which has not yet been passed upon by the Supreme Court of the state. The question has been at issue before the local Public Service Commission of New Hampshire, a commission which is comparatively new, and one whose powers have not been defined by the state courts. Upon certain proceedings, that Commission based its action upon the statute in question, accepting it as binding, and as establishing certain rights in respect to passenger railroad tariff rates in New Hampshire. The question thus grows out of a situation which is in a large sense a domestic one, and it goes without reasoning or saying that the New Hampshire courts, whose duty is coextensive with that of the federal courts in respect to all questions of right properly before them, are the appropriate courts to deal with the question in the first instance, and the federal courts, though of paramount authority in respect to federal questions, in such a situation, are bound under rules of comity to presume that the state courts will give force and effect to the federal laws and constitutional provisions, so far as they apply and become limitations, as well as to the laws of the state in respect to which there are no federal limitations.

We do not deem it necessary to inquire here as to the extent of the powers of the New Hampshire Public Service Commission. It manifestly has certain judicial power, and doubtless certain legislative power; but no particular point as to its powers either judicial or legislative is presented by the bill. The Boston & Maine Railroad filed a schedule of rates, acting upon the idea that such rates should become operative, notwithstanding the statute in question assumed to establish a maximum. The Commission accepted the statute as controlling contrary to the contention of the railroad. Thereupon the railroad petitioned for a rehearing, expressly putting in issue the question of the constitutionality of the act. The Commission, exercising its judicial function, denied the motion for rehearing. The statute which created the Commission, and also put the limitation upon the rates, broadly provides for an appeal to the Supreme Court of the state.

We have no hesitation in saying that we think the question of the validity of the New Hampshire statute was put in issue before the state tribunals through the initiative of the Boston & Maine Railroad, and that the railroad having first sought relief, through the instrumentalities of the state tribunals, from what it asserts is an oppres-

sion resulting from a state law which it claims contravenes the federal Constitution, that, before invoking federal aid, it should exhaust its opportunities to have the supposed wrong righted there. The Boston & Maine Railroad, through paragraph 4 of its bill, alleged that the New Hampshire mileage book statute was in contravention of the commerce clause of the federal Constitution, as well as in violation of the Constitution of New Hampshire; but both of those claims are expressly waived for the purposes of this hearing, and we have, therefore, no question whether the two-cent rate is either confiscatory or unreasonable. We have only the single question whether the statute upon its face is discriminatory, and therefore in violation of the fourteenth amendment to the Federal Constitution. The contention of the railroad is that as its objection to the mileage book statute is a single one, based upon the ground that the act is discriminatory upon its face, and that as no legislative phases are involved, they are within the decision of the Supreme Court of the United States in Railroad v. Smith, 173 U. S. 684, 699, 19 Sup. Ct. 565, 43 L. Ed. 858, which as they say declares a statute in substantial terms like the one here to be invalid because discriminatory, and that we are bound under federal considerations to accept the decision of the Supreme Court as controlling, and to at once afford relief from the New Hampshire statute. We express no opinion as to the scope or decisiveness of the Supreme Court decision, further than to say that, if a question like the one here has been decided by the Supreme Court, we should assume that it would be accepted as imperatively binding upon the state court as upon us, and, the question here being put first at issue before the New Hampshire tribunals, that the state remedies should be pursued until the state opportunities for relief have been exhausted. If, as a result of such a course, the petitioner should be relieved from the supposed grievance, there would be no occasion for invoking relief here or elsewhere in the federal courts, and, if a contrary result should be reached, it would unquestionably be open to the petitioner to have the supposed federal grievance righted by the Supreme Court upon writ of error, or possibly through an independent proceeding instituted in the lower courts of the United States.

We make no suggestion as to the proper remedy in case of a result adverse to the railroad before the state court or upon this phase of the case, further than to say that the petitioner would be at liberty to renew his application in the federal courts without fear of being met by a plea of res judicata. Prentis v. Atlantic Coast Line, 211 U. S. 210, 230, 29 Sup. Ct. 67, 53 L. Ed. 150.

In the Smith Case, to which reference has been made (173 U. S. 684, 19 Sup. Ct. 565, 43 L. Ed. 858), the defendant in error started the litigation in the state courts, and after the law had been sustained by the Supreme Court of Michigan, the railroad raised the question for the Supreme Court of the United States by writ of error, and that court passed upon the rights; not as rights involved in legislation in respect to matters about which the state Legislature had the power to act, but as rights safeguarded by the federal Constitution which were out of the sphere of legislative power and which were infringed

by the statute upon its face. Reference is made to the character of the question in that case, to distinguish it from the questions involved in the case of Bacon v. Rutland R. R. Co., 232 U. S. 134, 34 Sup. Ct. 283, 58 L. Ed. 538, upon which the petitioner in this case greatly relies. In the Bacon Case, where the Supreme Court sustained the view of going forward in the federal courts under an independent bill, the questions involved, if we read the case correctly, were in a very substantial sense legislative questions, and the right to go forward at once in the federal courts was sustained upon the ground that the right of appeal from the Vermont Public Service Commission in respect to these questions was not adequate, because the Supreme Court of Vermont has no legislative powers.

The question before us being the concrete question whether the mileage book statute is discriminatory upon its face, it is one to be controlled through judicial function, and as the right of appeal to the state Supreme Court given by the state statute requires that a rehearing by the Commission must first be asked, and that the ground of appeal shall be stated, and the question having been limited to the single one which we have stated, we think the remedy through the statutory right of appeal is entirely adequate, and that all reasonable considerations of comity and of public policy require that the statute, against which objection was first raised before the New Hampshire tribunals, should first receive attention from the state courts. By such a course the petitioner loses no substantive right, because the law furnishes him a perfect safeguard through resort to the United States courts for review in respect to questions covered by the federal Constitution.

The question as to where a grievance of this kind should first be entertained is more a question of desirability, convenience, and comity than a question of right, and we are not disposed to follow the proposition of the right of way through priority of jurisdiction further than to cite a note, containing authorities, which appears in 22 C. C. A. at page 358. It must be said, however, that aside from the force resulting from priority of jurisdiction is the further consideration that United States courts are reluctant to deal with state statutes with a view to sustaining or overthrowing them before the state courts have first had an opportunity to do that. The Supreme Court has repeatedly said that. It is said by Mr. Justice Hughes in Louis. & Nash. R. R. Co. v. Garrett, 231 U. S. 298, 305, 34 Sup. Ct. 48, 58 L. Ed. 229. It is said in effect by Mr. Justice Holmes in the Prentis Case, 211 U. S. 230, 29 Sup. Ct. 67, 53 L. Ed. 150, in which both Chief Justice Fuller and Mr. Justice Harlan, though concurring in the result, dissent from the opinion because it does not go far enough on lines of comity. It has more recently been said in an opinion by Mr. Justice Holmes, handed down November 2, 1914, in Pullman Co. v. Knott, 235 U. S. 23, 35 Sup. Ct. 2, 59 L. Ed. ——. It is true that these cases have reference to statutes which it is claimed offend state Constitutions, but it is not perceived that the reason of its being a state Constitution instead of the federal Constitution was the controlling reason. As has already been said the federal Constitu-

tion is a part of the system under which the state courts operate, and it is because the state courts recognize the federal system as a part of their own that rules of comity require, and particularly in cases first pending before them, that they should first have an opportunity to pass upon the statutes of their own state. It is incumbent upon the federal courts, in such a situation as this, to presume that, if the Supreme Court of the United States has declared a statute like the one involved here to be in contravention of the federal Constitution, the Supreme Court of New Hampshire will give the force of such a decision its proper consideration and scope. Such a presumption results in a large measure because of the strong expressions by state courts like those of Mr. Justice Cullen in Beardsley v. New York, L. E. & W. R. R. Co., 162 N. Y. 230, 56 L. Ed. 488, that "in obedience to the law, as declared by the Supreme Court of the United States, we must hold the statute of 1895 is invalid," that of the Supreme Court of Appeals of Virginia in the Coast Line Ry. Co. Case, 106 Va. 61, 67, 55 S. E. 572, 574 (7 L. R. A. [N. S.] 1086, 117 Am. St. Rep. 983, 9 Ann. Cas. 1124), that "we are bound by this decision, as it emanates from the highest tribunal in the country," and numerous like expressions which could be cited, if deemed necessary.

Holding this view as to where this statute should first receive consideration, there are two courses open—one, to deny the injunction and dismiss the bill, and leave the parties to resort, if necessary, to remedy through writ of error, or possibly through a new and independent proceeding in the District Court; and, second, to hold the proceeding here, together with the application for an injunction, in abeyance, as was done by the Supreme Court in the Prentis Case. There Mr. Justice Holmes said (211 U. S. 232, 29 Sup. Ct. 72, 53 L. Ed. 150):

"As our decision does not go upon a denial of power to entertain the bills at the present stage, but upon our views as to what is the most proper and orderly course in cases of this sort when practicable, it seems to us that the bills should be retained for the present to await the result of the appeals if the companies see fit to take them."

We are disposed to adopt the course suggested by Mr. Justice Holmes, and hold this proceeding in abeyance pending results in the state courts; and it is so ordered.

DODGE and BINGHAM, Circuit Judges, concur.