## STATE v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

June 25, 1915.

Nos. 18,969—(3).

**Recognition of injunction from Federal court.**

1. The orderly administration of the law should not expose a litigant to punishment for not doing an act which a court, acting within its jurisdiction and authority, has commanded him to refrain from doing.

**Jurisdiction of Federal court.**

2. The Federal court of the district of Minnesota had jurisdiction of

1 Reported in 153 N. W. 320.

an action brought by the stockholders of the various railroads of the state to test the validity of chapter 97 of the laws of 1907, known as the two-cent-fare law, and authority and jurisdiction by injunction to restrain such companies, their agents and officers, from putting in force, during the pendency of the action, the rate prescribed by that statute.

**Carrier — reasonable rates.**

3. The question whether railroad passenger or freight rates prescribed by statute are reasonable, or unreasonable and confiscatory, is a judicial question, exclusively for determination by the courts.

**Injunction — effect.**

4. The effect of an injunction, issued by a court of competent jurisdiction, restraining the enforcement of such statutory rates pending the action, is to suspend the operation thereof until the final determination of their validity.

**Criminal law — exclusion of evidence.**

5. The trial court erred in excluding the writ of injunction from evidence on the trial of the indictment against defendant for alleged violation of the statute.

Defendant corporation was indicted by the grand jury of Goodhue county of illegally charging and collecting from a person named more than two cents per mile for transporting him on its railroad from Frontenac to Red Wing. Defendant moved the district court to quash the indictment and demurred to the indictment. The motion to quash the indictment and the demurrer were overruled by Johnson, J. Defendant was tried before the same judge who denied defendant's motion to direct a verdict in its favor, and a jury which found defendant guilty as charged in the indictment. From an order denying its motion for a new trial, defendant appealed. Reversed.

*F. W. Root, Nelson J. Wilcox, Frank M. Wilson* and *Brown, Abbott & Somsen,* for appellant.

*Lyndon A. Smith,* Attorney General, and *A. J. Rockne,* for respondent.

BROWN, C. J.

Defendant, Chicago, Milwaukee & St. Paul Railway Company, a corporation, was indicted by the grand jury of Goodhue county,

130 M.—10.

and thereby charged with a violation of the provisions of chapter 97, p. 109, Laws 1907. Defendant interposed a motion to quash the indictment and also a general demurrer, both of which were overruled by the trial court. Thereupon defendant entered a plea of not guilty and the cause proceeded to trial, resulting in a verdict of guilty. Defendant appealed from an order denying a new trial.

The facts are as follows: By section 1 of chapter 97, p. 109, Laws 1907, the legislature of the state enacted that no railroad company, owning or operating a line of railroad within the state, should after May 1, 1907, charge or collect for carrying any passenger over the age of 12 years on any trip wholly within the state more than two cents per mile; and by section 2, that any railroad company, officer, agent or representative thereof, violating the provisions of section 1, "shall be guilty of a felony, and upon conviction thereof shall be punished by a fine not exceeding five thousand dollars, or by imprisonment in the state prison for a period not exceeding five years, or by both such fine and imprisonment." At the same session the legislature also enacted chapter 232 [p. 313], by which the maximum of certain commodity freight charges was fixed and prescribed, with authority given the railroad and warehouse commission to modify the same in particular instances, and declaring a violation of the statute a misdemeanor, and the punishment of any officer or agent of the railroad company so violating the same by imprisonment in the common jail not exceeding 90 days.

The validity of both statutes, with respect to the rates there fixed and prescribed, was challenged in certain stockholders' suits brought in the Federal court for the district of Minnesota, wherein it was claimed that such rates and charges were unreasonable and confiscatory. The history of that litigation, and the termination thereof, is disclosed by the decisions rendered therein. Minnesota Rate Cases, 230 U. S. 352, 33 Sup. Ct. 729, 57 L. ed. 1511, and Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. ed. 714, 13 L.R.A.(N.S.) 932, 14 Ann. Cas. 764. At the time the suits were commenced the Federal court ordered issued temporary injunctions restraining a compliance with the statutes pending the litigation. The injunctions were directed to the railroad companies,

including defendant, their officers and agents, the Minnesota Railroad and Warehouse Commission and the attorney general of the state. As originally issued the injunctions did not restrain or enjoin compliance with chapter 97, the passenger rate statute. Subsequently, however, and after a hearing upon the merits of the controversy before and a report by a master, appointed by the Federal court to hear and report the facts, the injunction was enlarged on July 1, 1911, so as to include that statute, as well as the commodity rate statute. And as issued and served on that day the injunction restrained and enjoined defendant, its officers and agents, during the pendency of the action, from observing or putting in force the provisions of either statute, or rates prescribed thereunder by the state railroad commission; and restrained and enjoined the attorney general and the members of the railroad and warehouse commission, during the pendency of the action, from attempting in any manner to compel the defendant to put in force or maintain such rates. The validity of the injunction as to the attorney general and the authority of the court to issue it were sustained by the Supreme Court of the United States in the Young case, and that it was valid as to the railroad company and its officers and agents there is and can be no question. It was in full force and operation at the time the indictment in this case was returned by the grand jury, and also at the time of the alleged violation of the statute, by the act of defendant's station agent in collecting the rate of fare thereby prohibited. On the trial below defendant offered the writ of injunction in evidence and it was excluded by the trial court on the ground that it was irrelevant to the issues in the case, and in no event binding upon the state courts.

Under the assignments of error several reasons are urged in support of the contention that the conviction of defendant should be set aside, but we confine our consideration of the case to the ruling of the court in excluding from evidence the writ of injunction. As our conclusion upon that question disposes of the case, the other questions need not be considered or determined.

The power and authority of the legislature, under certain restrictions, to prescribe and regulate, by direct action, or through the

railroad commission, freight and passenger rates as to all railroad companies operating in the state, is no longer a disputed question when the rates so prescribed have exclusive relation to the transportation of freight or passengers between points within the state. It is equally well settled that a statute, or an order of a commission acting under legislative authority, so prescribing rates, is not final or conclusive. There is in every such case the existing right of the railroad company, or the stockholders thereof, to a judicial hearing upon the question whether the rate so fixed and prescribed is unreasonable and confiscatory, and therefore a violation of the constitutional rights of the company to demand and receive fair and just compensation for services rendered. This question is judicial in its nature and one which the legislature cannot within constitutional limits determine, or prevent the courts from determining, either by direct legislative declaration, or by the imposition of drastic fines or penalties for a violation of the statute, the effect of which is to deter or prevent application to the courts. Ex parte Young, supra. The passenger rate statute in the case at bar declared a violation thereof a felony, punishable by fine or imprisonment in the state prison, or by both fine and imprisonment. The Supreme Court in the Young case declared this penalty unconstitutional on its face, for the only effect thereof was to prohibit, at least to deter, application to the courts for a hearing upon the reasonableness of the rates there prescribed. With the penalty thus eliminated it would seem at least doubtful whether a violation of the statute would constitute a crime. 12 Cyc. 142; State v. Fletcher, 5 N. H. 257. But we do not stop to consider the question.

The action to determine the validity of the statute was brought in the Federal court of the district of Minnesota, and by stockholders of the railroad corporation. It could have been brought and maintained in the state court. So far as the questions involved were concerned the Federal and state courts had concurrent jurisdiction. The injunction was issued to hold matters in *statu quo,* pending the determination of the question whether the rate was unreasonable and confiscatory, an issue inherent in the statute, solely for the court, and beyond the reach of the legislature. It expressly forbade com-

pliance with the statutory rate by the officers and agents of the company, and the effect of the injunction was to suspend the operation of the penal provisions of the statute until the judicial question was determined. Wadley So. Ry. Co. v. Georgia, 235 U. S. 651, 35 Sup. Ct. 214, 59 L. ed. 405. The court had jurisdiction and authority to do this. The question before us therefore is, whether the state courts, in such a case, are under any duty or obligation to respect the injunction, and to protect the railroad company and its numerous agents throughout the state from punishment for a violation of its commands. The question should be answered in the affirmative. It was optional with the plaintiffs in the action to present the issue to the state or to the Federal court. They elected to go to the Federal court. The court acquired jurisdiction and possessed the power and authority to determine all the issues in controversy, and had the right to hold and maintain that jurisdiction to the exclusion of all other courts. Ex parte Young, supra; In re Chetwood, 165 U. S. 443, 17 Sup. Ct. 385, 41 L. ed. 782. The injunction was issued in conformity with the law, and a violation of its commands would constitute a contempt of the authority of the court subjecting the guilty party to punishment. In such a situation, in ordinary litigation, the rule of comity between courts of concurrent jurisdiction justifies the court last applied to in suspending proceedings pending the trial and determination of the issues by the other court. To do otherwise would not only amount to an arbitrary disregard of the authority of the court first acquiring jurisdiction, but tend to obstruct and in a measure confuse and defeat the orderly and effective administration of the law. The general principles of the rule will be found tersely stated, with authorities, in 7 R. C. L. 1067, § 105, et seq.; Engels v. Lubeck, 4 Cal. 31; Bank v. Rhomberg, 37 Iowa, 664. But it is clear that the question in a case like that at bar should not be controlled by the general rule of comity, under which the suspension of proceedings rests in the discretion of the court. It is manifest that, in a situation and controversy like that here involved, the question should be considered and a stay of proceeding ordered upon much broader grounds. Boston & M. R. Co. v. Niles, 218 Fed. 944. The railroad company was

made party to the action and therein the company and its agents
were confronted with the command of the court on the one hand and
the ·prohibition of the statute on the other, to be punished, if the
contention of the state be sustained, whether the injunction was
obeyed or disobeyed; by the state courts if obeyed, and by the Federal
court·if disobeyed.    The administration of the law should not result
in or lead to a conflict or confusion of that sort.    Every person is
entitled to his day in court, a constitutional right to be heard before
he is condemned, and should not be deprived of his freedom of
action and at the same time exposed to punishment for not acting.
A similar situation was presented in the Niles case, supra, where
the Federal. court declined jurisdiction on the ground that the con-
troversy was then pending in the state tribunals, the court declaring
that the rule of comity in situations of this kind was something more
than a rule of mere courtesy or convenience.    If this prosecution had
been against an agent of the defendant, the Federal courts no doubt
possessed the authority after conviction to release and discharge him
on *habeas corpus*.    Such was the result in Hunter v. Wood, 209 U.
S. 205, 28 Sup. Ct. 472, 52 L. ed. 747, where an agent of the
railroad company had been prosecuted for a violation of a rate
statute after he had been restrained by injunction from putting it
in force.

.   But enough has been said.    It is clear, within the authorities cited,
that the court below erred in excluding the injunction from consid-
eration, for it constituted a complete defense to the prosecution, the
injunction being in force at the time of the trial, and imposed upon
the state court the duty of protecting defendant from the cross-fire to
which it and its agents were exposed.    In fact it would seem under
the Georgia case, supra, which was not before the learned trial
judge, that no conviction can be had for acts done by defendant
or its agents pending the litigation in the Federal court, and during
the life of the injunction, for, as already stated, the effect of the
injunction was to suspend for the time being the operation of the
statute. ·.           ·    ·

Some stress was laid in the court .below, and to some extent in
this court, upon a portion of .the opinion of the Supreme Court in

the Young case, to the effect that the power of the Federal court to issue injunctions does not include the power to restrain a court from acting in any cause brought before it, either of a civil or criminal nature. The court simply gave utterance to an abstract rule, and obviously did not intend to suggest that in this particular case the state courts might proceed in a civil or criminal action, notwithstanding the injunction, and litigate the very controversy then before the Federal court. In another part of the opinion the court had expressly stated that since the Federal court first acquired jurisdiction of the controversy it had the right to retain it, and fully and finally determine the matters in dispute. The language referred to would apply appropriately had the state court in this instance first acquired jurisdiction. Boston & M. R. Co. v. Niles, supra. But such is not the case.

We therefore hold that the trial court erred in excluding the writ of injunction, and for this reason the conviction must be and is vacated and set aside.

Order reversed.

SCHALLER, J., took no part.