## E. W. WILLIAMS v. ELIZA P. EVANS AND OTHERS.
## A. M. RAMER COMPANY v. SAME.[1]

December 21, 1917.

Nos. 19,166, 19,167.

**Constitution — state legislature — Fourteenth Amendment — liberty of contract.**

1. The state legislature possesses all legislative power not withheld or forbidden by the state or Federal Constitution. The provisions of the state Constitution, so far as here applicable, are not more restrictive than the Fourteenth Amendment to the Federal Constitution. This amendment guarantees liberty of contract, subject to regulation under the police power of the state.

**Master and servant — minimum wage act — police power.**

2. Chapter 547, Laws 1913, establishing a Minimum Wage Commission and providing for the determination and establishment of minimum wages for women and minors, is a valid exercise of the police power of the state.

**Constitution — delegation of legislative power.**

3. The legislature cannot delegate legislative power, but it may delegate authority or discretion to be exercised under and in pursuance of the law. It may delegate power to determine some fact or state of things upon which the law makes its own operation depend.

[1]Reported in 165 N. W. 495.

**Same.**

4. This act was a complete statute when it left the legislature; and does not delegate legislative power to the Minimum Wage Commission.

**Same — minimum wage act valid.**

5. Inequalities of minor importance do not render a law invalid. The limitations of the Constitution are flexible enough to permit of practical application.

Two actions in the district court for Ramsey county. The Williams action was by a taxpayer on his own behalf and on behalf of other taxpayers similarly situated. The Ramer action was by the owner of a manufacturing plant at which a large number of women workers, adult and minor, were employed. Both actions were to restrain the members of the Minimum Wage Commission from expending any money in furtherance of the provisions of Laws 1913, p. 789, c. 547, and to restrain defendant Iverson, as state auditor, from auditing any claims incurred by the commission on account of anything done under the provisions of the act and to restrain him from issuing any warrant in payment of any such claim.

Plaintiffs obtained orders requiring defendants to show cause why a temporary injunction should not issue. From an order in each case, Catlin, J., granting plaintiffs' motion for a temporary injunction, defendants appealed. From an order in the Ramer case overruling their demurrer to the complaint, defendants appealed. Reversed.

*Lyndon A. Smith,* Attorney General, *John C. Nethaway,* Assistant Attorney General, and *Alva R. Hunt,* for appellants.

The experience of the world and our common knowledge are continually changing. Things unknown a century ago are now familiar to us all; children of today are fully acquainted with modern inventions, such as telephones, electric lights, and other modern improvements; this common knowledge is not the same as it was even 25 years ago. Therefore the power of government termed the police power, being based upon common knowledge of what is injurious to the health, morals or welfare of the public, must of necessity be elastic as is the common knowledge itself. When that experience and knowledge have taught us that certain

things are injurious in any of these respects, then the police power expands to meet the necessity caused by our increased knowledge.

Under our form of government the legislature determines whether conditions call for corrective legislation. Mugler v. Kansas, 123 U. S. 623, 660, 8 Sup. Ct. 273, 31 L. ed. 205. The legislature, in passing laws intended to advance and protect the common welfare of society, need not wait until the opinions are all one way, or until all doubts that certain conditions are harmful, are removed by investigation. It is sufficient if the question of the baleful effect is debatable. Muller v. Oregon, 208 U. S. 412, 28 Sup. Ct. 324, 52 L. ed. 551; Matter of Viemeister, 179 N. Y. 235, 72 N. E. 97; State v. Layton, 160 Mo. 474. When a law is attacked as not being a valid exercise of the police power, evidence is not admissible to overcome common knowledge. Jacobson v. Massachusetts, 197 U. S. 11, 25 Sup. Ct. 358, 49 L. ed. 643.

If there were but one community in the state where the wage-earning women in the factories, stores and offices, were receiving less than living wages, and it was merely a debatable fact that such low wages underfed the women, tended to affect their strength and health, and tended to cause any number of them to accept the easy alternative of immorality to increase their income to meet their needs, the court would take judicial notice of those things and uphold any police regulation which in the judgment of the legislature tended to remedy the evil. In order to sustain the law, the court is not required to find beyond a reasonable doubt, that the conditions exist and that the enforcement of the law will tend to cure the evil; but to overthrow the law it must find beyond a reasonable doubt that the conditions do not exist, or that the means sought will not tend to remedy the evil.

Woman's weaker physical structure, her maternal functions and necessary dependency on man, place her at a disadvantage in the struggle for existence. Muller v. Oregon, 208 U. S. 412, 421, 28 Sup. Ct. 324, 52 L. ed. 551.

There is no literature tending to prove that wages, below a living wage, do not tend to injuriously affect the health and morals of wage-earning women. The literature is all the other way, and there are volumes of it. The reports of the numerous commissions, established by law in the various states, expressly to inquire into the condition of

wage-earning women, are entitled to great weight. Massachusetts Commission on Minimum Wage (1912); Louise B. Moore, Study of Standards and Cost of Living (1907); Elizabeth B. Butler, Women and the Trades (1909); Senate Document No. 645, 61st Congress, 2nd Session (1912).

Laws have been passed in a dozen or more states regulating the hours of labor of women and all have been upheld as a proper exercise of the police power for the protection and preservation of the public health. They are all based upon the principle that women are in a class by themselves, in the nature of wards of the state, or dependents, that any legislation necessary for the protection of their health and general welfare, is for the general welfare, and private rights must yield for the common good. Comm. v. Riley, 210 Mass. 287, 97 N. E. 367; W. C. Ritchie & Co. v. Wayman, 244 Ill. 509, 91 N. E. 695; People v. Elerding, 254 Ill. 579, 98 N. E. 982; Ex parte Miller, 162 Cal. 687, 124 Pac. 427; Withney v. Bloem, 163 Mich. 419, 128 N. W. 913; State v. Dominion Hotel, 17 Ariz. 267, 151 Pac. 958.

So laws which not only fix the hours of labor but also fix the minimum wage have been held valid. Malette v. City of Spokane, 77 Wash. 205, 137 Pac. 496; Atkin v. Kansas, 191 U. S. 207, 210, 24 Sup. Ct. 124, 48 L. ed. 148; State v. Midwest Const. Co. (Kan.) 162 Pac. 1175; Byars v. State, 2 Okla. Cr. 481, 102 Pac. 804; Clark v. State, 142 N. Y. 101, 36 N. E. 817.

*Felix Frankfurter,* attorney for the Consumer's League, as amicus curiae, filed a copy of his brief in Stettler v. O'Hara, 243 U. S. 629.

*Brown, Abbott & Somsen* and *Young, O'Brien & Stone,* for respondents.

It is settled by Federal decisions that: (1) Hours of labor may be fixed in public works—that is, in works for the state or its municipal subdivisions—free from interference by Federal authority; (2) hours of labor of men cannot be fixed in private employment, unless the employment is visibly injurious to public health; (3) hours of labor for women may be fixed by law in public or private employment. Atkin v. Kansas, 191 U. S. 207, 24 Sup. Ct. 124, 48 L. ed. 148; Holden v.

Hardy, 169 U. S. 366, 18 Sup. Ct. 383, 42 L. ed. 780; Mueller v. Oregon, 208 U. S. 412, 28 Sup. Ct. 324, 52 L. ed. 551.

There is no analogy between laws relating exclusively to hours of labor and laws fixing a minimum wage, except so far as both interfere with the liberty of contract, which is one of the rights included in the "liberty" protected by the Fourteenth Amendment.

The act is unconstitutional because it is subversive of the political and economic principles upon which our governmental system rests. Lochner v. New York, 198 U. S. 48, 25 Sup. Ct. 539, 49 L. ed. 937 (bakery case); Peterson v. Widule, 157 Wis. 641, 147 N. W. 966, 52 L.R.A.(N.S.) 790, and because it is in violation of Const. (Minn.) art. 1, § 7, and Amendment 14 of the Federal Constitution, and deprives respondent and others in his class, of the liberty to contract, taking their property without due process of law. The act is unconstitutional because it delegates legislative authority to the Minimum Wage Commission, created by the act. State v. Chicago, M. & St. P. Ry. Co. 38 Minn. 281, 37 N. W. 782; Brenke v. Borough of Belle Plaine, 105 Minn. 84, 117 N. W. 157. (a) The legislative question of whether there shall be a legal wage at all, and if so when and under what circumstances it shall be put into effect, is placed by the act in the power and discretion of the commission. (b) Under sections 7-9 of the act the commission by the aid of its advisory boards in its uncontrolled discretion and judgment produces the legal wage, and assumes to exercise under those sections the highest legislative authority. (c) The legislative question of when or under what circumstances a wage once fixed shall be repealed or amended is placed in the unlimited discretion of the commission by section 10. (d) By section 11 the commission is vested with power to amend the wage law at its pleasure, excepting persons from its operation.

The act is also unconstitutional because the commission is vested with the law-making power to classify persons and subjects for the legislative purposes, and because the law, and the orders made under it, involved in this suit are so indefinite and uncertain in their terms as to be incomprehensible.

HALLAM, J.

The legislature of Minnesota in 1913 passed an act (Laws 1913, p. 789, c. 547 (G. S. 1913, § 3904), establishing a Minimum Wage Commission and providing for the determination and establishment of minimum wages for women and minors.

This act defines a living wage as a wage "sufficient to maintain the worker in health and supply him with the necessary comforts and conditions of reasonable life." "Minimum wage" is given the same meaning. Section 20 (G. S. 1913, § 3923).

The act prohibits every employer in any occupation "from employing any worker at less than the living wage or minimum wage as defined in this act and determined in an order of the commission." Section 12 (G. S. 1913, § 3915).

The act gives the commission the power "at its discretion" or at the request of not less than 100 persons engaged in any occupation where women and minors are employed, to make an investigation. The commission must hold public hearings at which employers and employees may appear. If, after investigation, the commission is of opinion that the wages paid to one-sixth or more of the women or minors employed therein are less than living wages, the commission shall establish a legal minimum rate of wages in said occupation for women and minors of ordinary ability and for learners and apprentices. The commission shall then issue an order to be effective 30 days thereafter making the wages then determined the minimum wages in said occupation throughout the state or within any area of the state, if differences in the cost of living warrant this restriction.

Defendants, members of a commission constituted as provided by the act, after a hearing and investigation, made two orders fixing minimum wages for women and minors of ordinary ability in certain occupations. These actions are brought to restrain the enforcement of the orders on the ground that the statute is unconstitutional and void. The trial court overruled a demurrer to the complaint and ordered a temporary injunction as prayed. Defendants appealed. The ground of the order was that the statute is unconstitutional and void. This is the question in the case.

1. We do not look to the Constitution to find legislative power of a

state. The state legislature possesses all legislative power not withheld or forbidden by the terms of the state or Federal Constitution. State v. Corbett, 57 Minn. 345, 59 N. W. 317, 24 L.R.A. 498; State v. City of Mankato, 117 Minn. 458, 463, 136 N. W. 264, 41 L.R.A.(N.S.) 111.

There are some limitations in the state Constitution on legislative power. It may safely be said, however, that, so far as applicable to the facts in this case, there are none more restrictive than the limitations of the Fourteenth Amendment to the Federal Constitution. We may therefore direct our inquiry to the question whether this law is violative of any provisions of the Fourteenth Amendment.

The pertinent part of the Fourteenth Amendment reads: "Nor shall any state deprive any person of * * * liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." This guarantees to the citizen liberty of contract and liberty to conduct his business affairs in his own way. Atkin v. Kansas, 191 U. S. 207, 24 Sup. Ct. 277, 48 L. ed. 148; Lochner v. New York, 198 U. S. 45, 48, 25 Sup. Ct. 539, 49 L. ed. 937, 3 Ann. Cas. 1133; Adair v. U. S. 208 U. S. 161, 28 Sup. Ct. 277, 52 L. ed. 436, 13 Ann. Cas. 764; McLean v. Arkansas, 211 U. S. 539, 545, 29 Sup. Ct. 206, 53 L. ed. 315; Coppage v. Kansas, 236 U. S. 1, 35 Sup. Ct. 240, 59 L. ed. 441, L.R.A. 1915C, 960. This right it is claimed has been infringed by this statute.

The liberty of contract guaranteed by this amendment is not absolute. It is subject to the power of the state to legislate for certain permissible purposes. For example, the state may, under certain conditions regulate hours of labor of women (Muller v. Oregon, 208 U. S. 412, 28 Sup. Ct. 324, 52 L. ed. 551, 13 Ann. Cas. 957; Riley v. Massachusetts, 232 U. S. 671, 34 Sup. Ct. 469, 58 L. ed. 788); or of minors in certain occupations (Sturges & Burn Mnfg. Co. v. Beauchamp, 231 U. S. 320, 34 Sup. Ct. 60, 58 L. ed. 245, L.R.A. 1915C, 1196); or of men engaged in employments hazardous to health (Holden v. Hardy, 169 U. S. 366, 18 Sup. Ct. 383, 42 L. ed. 780; Bunting v. Oregon, 243 U. S. 426, 37 Sup. Ct. 435, 61 L. ed. 830); or of men employed on public work (Atkin v. Kansas, 191 U. S. 207, 24 Sup. Ct. 124, 48 L. ed. 148); or it may regulate conditions of labor, or the time of payment of employees (Patterson v. Bark Eudora, 190 U. S. 169, 23 Sup. Ct. 821, 47 L. ed.

1002; Erie R. Co. v. Williams, 233 U. S. 685, 34 Sup. Ct. 761, 58 L. ed. 1155, 51 L.R.A.(N.S.) 1097); or the manner or medium of payment (Knoxville Iron Co. v. Harbison, 183 U. S. 13, 22 Sup. Ct. 1, 46 L. ed. 55; McLean v. Arkansas, 211 U. S. 539, 29 Sup. Ct. 206, 53 L. ed. 315).

The power of a state legislature to restrict liberty of contract is coincident with what is familiarly known as the police power. Freund, Police Power, §§ 498-500. "The police powers of the state," said Chief Justice Taney, in the License Cases (Thurlow v. Massachusetts, 5 How. 504, 583, 12 L. ed. 256), "are nothing more or less than the powers of government inherent in every sovereignty to the extent of its dominions." In Barbier v. Connolly, 113 U. S. 27, 31, 5 Sup. Ct. 357, 359, 28 L. ed. 923, Justice Field defines the police power as the "power, to prescribe regulations to promote the health, peace, morals, education and good order of the people, and to legislate so as to increase the industries of the state, develop its resources and add to its wealth and prosperity." In Noble State Bank v. Haskell, 219 U. S. 104, 111, 31 Sup. Ct. 186, 188, 55 L. ed. 112, 32 L.R.A.(N.S.) 1062, Ann. Cas. 1912A, 487, that court broadened the definition as follows: "It may be said in a general way that the police power extends to all the great public needs. * * * It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare," citing Camfield v. U. S. 167 U. S. 518, 17 Sup. Ct. 864, 42 L. ed. 260.

Yet there is a limit to the valid exercise of the police power by the state. It is not enough to merely assert that the subject relates to the health, peace, morals, education or good order or welfare of the people. "The act must have a more direct relation, as a means to an end, and the end itself must be appropriate and legitimate, before an act can. be held to be valid which interferes with the general right of an individual to be free in his person and in his power to contract in relation to his own labor." Lochner v. New York, 198 U. S. 45, 57, 25 Sup. Ct. 539, 543, 49 L. ed. 937, 3 Ann. Cas. 1133. "The liberty of contract guaranteed by the Constitution is freedom from arbitrary restraint" not freedom from reasonable regulation. The real test is whether the limitation is a "reasonable regulation to safeguard the public interest,"

imposed, not solely for the benefit of the individual, but essentially for the common benefit of all. Miller v. Wilson, 236 U. S. 373, 380, 35 Sup. Ct. 342, 59 L. ed. 628, L. R. A. 1915F, 829.

2. Bearing these principles in mind, we must determine whether this statute is within the proper field of legislation.

There is a notion, quite general, that women in the trades are underpaid, that they are not paid so well as men are paid for the same service, and that in fact in many cases the pay they receive for working during all the working hours of the day is not enough to meet the cost of reasonable living. Public investigations by publicly appointed commissions have resulted in findings to the above effect. Starting with such facts, there is opinion, more or less widespread, that these conditions are dangerous to the morals of the workers and to the health of the workers and of future generations as well.

It is a strife for employer and employee to secure proper economic adjustment of their relations so that each shall receive a just share of the profits of their joint effort. In this economic strife, women as a class, are not on an equality with men. Investigating bodies, both of men and of women, taking all these facts into account, have urged legislation designed to assure to women an adequate working wage. The legislatures of 11 states have passed laws having the same purpose as the one here assailed.

It is not a question of what we may ourselves think of the policy or the justification of such legislation. The question is, is there any reasonable basis for legislative belief that the conditions mentioned exist, that legislation is necessary to remedy them, and that laws looking to that end promote the health, peace, morals, education or good order of the people and are "greatly and immediately necessary to the public welfare?" If there is reasonable basis for such legislative belief, then the determination of the propriety of such legislation is a legislative problem to be solved by the exercise of legislative judgment and discretion. Holden v. Hardy, 169 U. S. 366, 398, 18 Sup. Ct. 383, 42 L. ed. 780.

We think sufficient basis exists. It is not necessary that we should hold that statutes of this kind applicable to men would be valid. We think it clear there is such an inequality or difference between men and women in the matter of ability to secure a just wage and in the conse-

quences of an inadequate wage that the legislature may by law conpensate for the difference. That there is such difference, has been recognized as an economic fact by the United States Supreme Court, Muller v. Oregon, 208 U. S. 412, 28 Sup. Ct. 324, 52 L. ed. 551, 13 Ann. Cas. 957; Miller v. Wilson, 236 U. S. 373, 35 Sup. Ct. 342, 59 L. ed 628, L.R.A. 1915F, 829. Two cases have arisen in other states involving the constitutionality of minimum wage laws for women. In both the laws were sustained. Stettler v. O'Hara, 69 Ore. 519, 139 Pac. 743, L.R.A. 1917C, 944, Ann. Cas. 1916A, 217; State v. Crowe, 130 Ark.—, 197 S. W. 4.

We sustain the principle of minimum wage legislation as applied to women. By like reasoning the principle may be sustained as applied to minors.

3. The other main contention of the respondent is that the law is unconstitutional because it delegates legislative power to a commission. The act delegates to the commission extensive powers. It is well settled that the legislature may not delegate to a commission the power to make laws. State v. Chicago, M. & St. P. Ry. Co. 38 Minn. 281, 37 N. W. 782; State v. Great Northern Ry. Co. 100 Minn. 445, 111 N. W. 289, 10 L.R.A.(N.S.) 250; Brenke v. Borough of Belle Plaine, 105 Minn. 84, 117 N. W. 157. A statute, to be valid, must be complete as a law when it leaves the legislature. If, by the terms of the act, it is to be effective only in case a commission deems the act expedient, then there is a delegation of legislative power and the act is void, for a determination of legislative expediency can be made by the legislature alone. State v. Young, 29 Minn. 474, 9 N. W. 737. The legislature may, however, delegate to a commission the power to do some things which it might properly, but cannot advantageously, do itself. State v. Chicago, M. & St. P. Ry. Co. 38 Minn. 281, 299, 37 N. W. 782; Wayman v. Southard, 10 Wheat. 1, 42, 6 L. ed. 253. It may vest in a commission authority or discretion to be exercised in the execution of the law. State v. Chicago, M. & St. P. Ry. Co. supra; State v. Wagener, 77 Minn. 483, 80 N. W. 633, 778, 1134, 46 L.R.A. 442, 77 Am. St. 681; State v. Great Northern Ry. Co. 100 Minn. 445, 111 N. W. 289, 10 L.R.A.(N. S.) 250; Borgnis v. Falk Co. 147 Wis. 327, 358, 133 N. W. 209, 37 L.R.A.(N.S.) 489. It may delegate power to determine some fact or

state of things upon which the law makes its own action or operation depend (Locke's Appeal, 72 Pa. St. 491, 13 Am. Rep. 716; Union Bridge Co. v. U. S. 204 U. S. 364, 383, 27 Sup. Ct. 367, 51 L. ed. 523), and may declare its law shall be operative or applicable only upon the subsequent establishment of some fact. Minneapolis, St. P. & S. S. M. Ry. Co. v. Railroad Commission, 136 Wis. 146, 116 N. W. 905, 17 L.R. A.(N.S.) 821; Cargo of Brig Aurora v. U. S. 7 Cranch, 382, 3 L. ed. 378. In all such cases, when it does take effect, it is by force of legislative action as fully as if the legislature had fixed, without condition, the time or occasion of its becoming effective. State v. Sullivan, 67 Minn. 379, 69 N. W. 1094. "The true distinction * * * is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made." Cincinnati, W. & Z. R. Co. v. Commrs. of Clinton County, 1 Oh. St. 77, 88, quoted in Field v. Clark, 143 U. S. 649, 693, 694, 12 Sup. Ct. 495, 36 L. ed. 294.

4. Respondent contends that this act was not a complete law when it left the legislature and that there was no complete law until after the commission made an order and that the power to determine "when and where there shall be any law, and what it shall be, is to be exercised at the whim and caprice of the commission."

Let us address ourselves to this question. As above stated, section 20 defines a living wage. Section 12, in effect, enjoins every employer to pay a living wage "as defined in this act and determined in an order of the commission."

We think this must be construed as establishing a living wage as defined in the act as the lawful minimum wage, and as fixing a living wage as so defined as the standard by which the commission must be guided in determining a minimum wage for any occupation. The determination of a minimum wage by the commission is accordingly a determination of a fact "upon which the law makes * * * its own action depend."

We do not overlook the fact that the statute cannot be effectively executed nor its penalties enforced until the commission establishes a mini-

mum wage, nor the fact that the commission is given a discretion as to when to make the investigation into any particular occupation which may result in an order fixing a minimum wage in that occupation. These provisions vest "discretion as to its execution, to be exercised under and in pursuance of the law," and they do not prevent the act from being a complete law nor render it invalid. There are abundant instances of the application of this principle.

One court has gone so far as to say: "Half the statutes on our books are in the alternative, depending on the discretion of some person or persons to whom is confided the duty of determining whether the proper occasion exists for executing them. But it cannot be said that the exercise of such discretion is the making of the law." Moers v. City of Reading, 21 Pa. St. 188, 202, quoted in Field v. Clark, 143 U. S. 649, 694, 12 Sup. Ct. 495, 36 L. ed. 294.

The acts of Congress, establishing forest reservations, provide that their use for grazing purposes is subject to rules and regulations established by the secretary of agriculture, and make violation of such rules and regulations a penal offense. In U. S. v. Grimaud, 220 U. S. 506, 522, the defendant was convicted of violation of some rule or regulation of the department. The court sustained the law as against objection that this was an unconstitutional delegation of legislative power and said: "A violation of reasonable rules regulating the use and occupancy of the property is made a crime, not by the Secretary, but by Congress. The statute, not the Secretary fixes the penalty."

In Red "C" Oil Mnfg. Co. v. Board of A. of North Carolina, 222 U. S. 380, 390, 32 Sup. Ct. 152, 56 L. ed. 240, an act of the legislature of North Carolina provided that "all kerosene, or other illuminating oils, sold or offered for sale in this state, shall be subject to inspection and test to determine the safety and value for illuminating purposes." Power is conferred on the board of agriculture to make all necessary rules and regulations for the inspection of such oil and to adopt standards of safety, purity and luminosity, "which they may deem necessary to provide the people of the state with satisfactory illuminating oil." Penalties are provided for disobedience of the orders of the board. There could be no penalty until the board made an order. Objection was raised that this was a delegation of legislative power. The court

held the objection untenable and regarded the statute as in effect imposing a requirement that illuminating oils be safe, pure and afford a satisfactory light and as empowering the board of agriculture to determine that oils measure up to these standards.

In Buttfield v. Stranahan, 192 U. S. 470, 496, 24 Sup. Ct. 349, 48 L. ed. 525, the court had before it an act of Congress which made it unlawful to import tea inferior in purity, quality and fitness for consumption, provided for a board of experts, gave the secretary of the treasury power, upon recommendation of the board, to fix uniform standards of purity, quality and fitness for consumption, and provided that tea inferior to such standards should be within the prohibition of the act. Inferior tea was liable to destruction under certain conditions. Objection was made that this vested legislative power in the secretary of the treasury. This was overruled. The court held that "Congress legislated on the subject as far as was reasonably practicable, and from the necessities of the case was compelled to leave to executive officials the duty of bringing about the result pointed out by the statute." See also Monongahela Bridge Co. v. U. S. 216 U. S. 177, 30 Sup. Ct. 356, 54 L. ed. 435; Mutual Film Corp. v. Ohio Ind. Comm. 236 U. S. 230, 35 Sup. Ct. 387, 59 L. ed. 552, Ann. Cas. 1916C, 296.

In all such cases, the punishment is not fixed by the board, the making of rules is administrative, the substantial legislation is in the statute which provides the law and the penalty. Brodbine v. Revere, 182 Mass. 598, 66 N. E. 607; U. S. v. Grimaud, 220 U. S. 506, 520, 31 Sup. Ct. 480, 55 L. ed 563.

Decisions similar to the foregoing might be multiplied, but we think it unnecessary. The principles stated are now well recognized. The act contains no delegation of legislative power.

5. Other minor objections are raised. The commission is empowered to establish a minimum wage in any occupation, only when the wages paid to one-sixth or more of the women or minors employed therein are less than living wages. This is assailed as an unlawful basis of classification. The objection is not well taken. The act may exclude cases of minor or negligible importance. In Jeffrey Mnfg. Co. v. Blagg, 235 U. S. 571, 35 Sup. Ct. 167, 59 L. ed. 364, similar objections were made to the Workmen's Compensation Act of the state of Ohio, and they were

overruled. See also St. Louis Consol. Coal Co. v. Illinois, 185 U. S. 203, 22 Sup. Ct. 616, 46 L. ed. 872; McLean v. Arkansas, 211 U. S. 539, 29 Sup. Ct. 206, 53 L. ed. 315.

The limitations of the Constitution are flexible enough to permit of practical application. Recent decisions have more and more "recognized the difficulty of exact separation of the powers of government" (Mutual Film Corp. v. Ohio Ind. Comm. 236 U. S. 230, 246, 35 Sup. Ct. 387, 59 L. ed. 552), and the necessity of giving weight to practical considerations. Buttfield v. Stranahan, 192 U. S. 470, 496; Jeffrey Mnfg. Co. v. Blagg, 235 U. S. 571, 578, 35 Sup. Ct. 167, 59 L. ed. 364.

Objection is raised to sections 7 to 9 (G. S. 1913, §§ 3910-3912), which provide for "an advisory board," define its powers and the power of the commission to act upon its estimates, and section 10 (G. S. 1913, § 3913), which gives power to the commission in certain event to order new rates of minimum wages "if it sees fit." The validity of these provisions are not involved in this case, unless it can be said the whole act depends upon their validity. We do not think it does. We do not pass upon these provisions.

Order reversed.

On March 1, 1918, the following opinion was filed:

PER CURIAM.

The point is made in an application for a rehearing in this cause that the court failed to determine the question whether the order of the commission is void for uncertainty, in that the period is not therein prescribed during which employees may be treated as "learners" and "apprentices." We did not regard this as fatal to the order. These terms have a modern meaning reasonably well understood. City of St. Louis v. Bender, 248 Mo. 113, 117, 154 S. W. 88, 44 L. R. A. (N. S.) 1072. Practical experience under the order may suggest and render necessary something more specific in the respect stated. If so, a modification may be made to meet the conditions thus disclosed. But the absence of specific provisions in this particular is not fatal, and the order in the present form is valid. Until some action is taken by the commission, or by statute, the matter will be subject to regulation by contract between the employer and employee.

By the terms of the statute under which the order was made the operation thereof was postponed for the period of 30 days from its date. Prior to the expiration thereof the injunction herein was issued, thereby further postponing the operation of the order, and it will not go into effect until the injunction is dissolved on the remand of the cause to the court below. G. S. 1913, § 7888; State v. Chicago, M. & St. P. Ry. Co. 130 Minn. 144, 153 N. W. 320.

Petition for rehearing denied.